CASE 3—APPLICATION BY JOHN TRAYNOR AGAINST J. C. W. BECKHAM (GOVERNOR) TO COMPEL THE ISSUANCE OF A COMMISSION TO HIM AS POLICE JUDGE OF NICHOLASVILLE.—JUNE 11.

# Traynor v. Beckham, Governor.

APPEAL FROM FRANKLIN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

POLICE JUDGES—VACANCIES—APPOINTMENT—CITY COUNCIL—POWERS —GOVERNOR—MINISTERIAL DUTIES—MANDAMUS.

Held:  1. Constitution, section 152, provides that vacancies in all offices for the State at large, or districts larger than a county, shall be filled by appointment of the Governor, and that all other appointments shall be made as prescribed by law. Kentucky Statutes, section 3551, declares that if a vacancy shall occur in any office which the city council has the right to fill by appointment, such vacancy may be filled by it for the remainder of the unexpired term; and section 3552 provides that if a vacancy shall occur in any elective office, including the office of councilman, such vacancy shall be filled by the council, subject to the provisions of the Constitution. Section 3758 requires the Governor to issue commissions to certain officers, and provides that should a vacancy in any of such offices occur where there is no provision of law for filling the same, the vacancy shall be filled by the Governor. HELD, that since Kentucky Statutes, section 3510, provides that the office of police judge of a city may be filled by election or by appointment of the council, as it may determine by ordinance, where a vacancy occurred in the office of police judge the city council had authority to fill the same under sections 3551, 3552.

2. Under Kentucky Statutes, section 3758, providing that police judges shall have commissions issued to them by the Governor, where a police judge was legally appointed by a city council to

fill a vacancy, the Governor was under a ministerial duty to the appointee to issue such commission.

3. Where the Governor of a State refused to perform the ministerial duty of issuing a commission to a police judge legally appointed by a city council, as required by Kentucky Statutes, section 3758, mandamus was maintainable against the Governor to compel the issuance of such commission.

N. L. BRONAUGH, ATTORNEY FOR APPELLANT.

The question presented in this appeal is, "Has the Franklin Circuit Court jurisdiction to grant a writ of mandamus, to be issued against the appellee, as Governor of Kentucky, commanding him to issue a commission to appellant authorizing him to enter upon and discharge the duties, exercise the powers and receive the emoluments of the office of judge of the police court of Nicholasville."

That the circuit court being a court of general jurisdiction, has jurisdiction to grant the writ, is affirmed by the appellant.

The allegations of the petition for the purpose of the special demurrer being admitted, and also being admitted sufficient to authorize the issuing of the writ, except for the sole reason that the appellee is the Governor of the State.

The jurisdiction of the court is denied by appellee solely on the ground that he is Governor of the State.

That the Governor of a State in common with other executive officers in the exercise of those powers and duties confided to their discretion by the Constitution and laws of the State, is independent of the supervision of the judiciary, and can not be coerced or controlled by the writ of mandamus is conceded.

That he is amenable to the compulsory process of the courts by the writ of mandamus in the performance of purely ministerial duties imposed on him by the statute, which might have been imposed on some other officer, and which affect any specific private right is maintained by the courts of some of the States, and denied by the courts of some of the other States can not be questioned.

In so far as I have been able to ascertain the Kentucky Court of Appeals has never decided this particular question; that is, as to whether the Governor is subject to this writ, in a case where the Governor was a party. But the principle upon which the writ is issued has been decided in a number of cases.

It will be my effort to consider the question, in the light of the Kentucky authorities, and Kentucky laws applicable thereto, and if possible reach a conclusion based upon the law as it exists in this State, and in the light of reason, without calling in assistance from the outside.

Traynor v. Beckham, Governor.

The only writ of mandamus that we know of in this State is defined in section 477 of the Civil Code as being "an order of a court of competent and original jurisdiction, commanding an executive or ministerial officer to perform an act, or to omit to do an act, the performance or omission of which is enjoined by law," and is granted on the motion of the party aggrieved.

The Governor, by reason of his office, is the chief executive officer of the State, and there is no amendment of section 477 of the Code adding the words, "Excepting the Governor of the Commonwealth of Kentucky" after the word "Executive."

And the word "executive" being generic in its application, I believe I am justified in my conclusion that the Governor is at least one of the executive officers referred to in that section.

But the Governor in common with other officers of his department has two classes of duties to perform. One class is composed of those which are governmental or political in their nature, which pertain and adhere to his office, as a part of it, and as to which he has an inherent right to exercise his personal judgment and discretion in their performance. In the exercise of these duties, the Governor can not be coerced or controlled by the courts.

The other class is composed of those duties which have been imposed on the Governor by some specific statute, directing him to do some certain thing, which does not, by nature, or under the theory of our Government, pertain or adhere to the office of the Governor, but which are purely ministerial in their nature and character, and which might just as well have been imposed upon some other officer. These duties are simply ministerial, about which he has no discretion, and about which he has no judgment to exercise; as to these duties, while he is the official head of the executive department, he is simply a ministerial officer. Thus in the exercise of the duties of his office he acts both in the character of an executive and ministerial officer, and considered in this light, section 477 of the Code refers especially and particularly to him.

But notwithstanding the broad and comprehensive generic terms used in this section appellee claims that because he holds the office of Governor of the Commonwealth of Kentucky, he is exempt from this process of the court.

As one of the first principles upon which our free republican form of Government is based we have from its inception in the Declaration of Independence down to our present State Constitution declared and maintained that all men are by nature free and equal. Equal, in what? Socially? No. Mentally? No.

Physically? No. Equal in what? Equal before the law? Yes, that is what it means.

Then if all men are equal before the law the appellant in this case is the equal of the appellee before the law. And if the appellee has placed himself in the position of refusing to perform a service for the appellant to which appellant is entitled, and which the appellee under the terms of the statute must perform, then the appellant has the right to apply to a court of competent and original jurisdiction to determine his right, and that court has jurisdiction to issue any process within its province to command and enforce the performance of the duty, it matters not who the person is against whom the order is to issue, or what office he may hold.

The law applies to all alike. No man or officer is above the law. And no exclusive privilege shall be granted to any man or set of men, except in consideration of public services. And even under the exception it must be done by special enactment.

It can not be claimed in this State that the Governor is exempt from the compulsory mandamus of the courts by reason of anything in the law as it is written, for there is no exemption or exception in favor of the Governor.

## AUTHORITIES CITED AND RELIED ON.

Civil Code, sec. 477; Bruce v. Fox, 1 Dana, 447; Justices of Jefferson County v. Clark, 1 Mon., 86; Page, Second Auditor, v. Hardin, 8 B. Mon., 648; Steele, Mayor, &c. v. Willis, &c., 23 Ky. Law Rep., 826; City of Lebanon v. Creel, 22 Ky. Law Rep., 865; Duncan v. Mayor of Louisville, 8 Bush, 106; Constitution, secs. 152, 160 and 84; Ky. Stats., secs. 3510, 3551, 3552 and 3758; Marbury v. Madison, 1 Cranch, 137; Kendall v. United States, 12 Peters, 524; Decatur v. Paulding, 14 Peters, 497; Guthrie v. United States, 17 How., 284; Seaman v. United States, 17 How., 225; Reeside v. Walker, 11 How., 289; Schurtz v. United States, 102 U. S., 378; Butterworth v. United States, 112 U. S., 50; United States v. Black, 128 U. S., 40; United States v. Windom, 137 U. S., 636; United States v. Blaine, 139 U. S., 306; Roberts v. United States, 176 U. S., 228; State v. Thayer, 31 Neb., 82; Martin v. Ingram, 38 Kan., 641; Middleton v. Low, 30 Cal., 596; Harpending v. Haight, 39 Cal., 189; Tenn., &c., R. R. v. Moore, 36 Ala., 371; Magruder v. Swann, 25 Md., 173; Groome v. Gwinn, 43 Md., 572; Chumasero v. Potts, 2 Mont., 242; State v. Blasdel, 4 Nev., 241; State v. Chase, 5 Ohio St., 528; Greenwood, &c., Land Co. v. Routt, 17 Col., 156; 31 Am. St. Rep., 294; Civil Code, secs. 152-477.

And the dissenting opinions in State v. Governor, 17 Fla., 67, and Hartranft's Appeal, 85 Pa. St., 433 (27 Am. Rep., 667, &c).

A. O. STANLEY, ATTORNEY FOR APPELLEE.

(No brief in the record for appellee.)

On petition for rehearing by appellee, C. J. Pratt, Attorney General filed the following suggestions.

The appellee, J. C. W. Beckham, comes and says that in the court below he filed a general demurrer and a special demurrer to the plaintiff's petition; that on the hearing of said action the court below sustained the special demurrer to said petition on the ground that the court had no jurisdiction of the defendant.

It logically followed that the question presented on the appeal was whether the circuit court had jurisdiction to grant the writ of mandamus. The allegations of the petition for all the purposes of the demurrer were admitted as true. The jurisdiction of the court was denied to the appellant solely on the ground that the appellee was Governor of the State, and that he was not amenable to the compulsory process of the court or its writ of mandamus.

In the able opinion of this court it is said that three questions are presented on this appeal: (1) Did the board of council have the right to make the appointment? (2) Was it the duty of the Governor under the law to issue the commission? (3) Have the courts authority to issue a mandamus against the Governor to compel him to issue the commission?

By section 150 of the Constitution it is provided: "Vacancies in all offices for the State at large, or for districts larger than a county, shall be filled by appointment of the Governor; all other appointments shall be made as may be prescribed by law."

By this provision of the Constitution authority is conferred upon the Governor to fill all vacancies for the State at large, or for districts larger than a county. Vacancies in other offices shall be filled as prescribed by law. The statutes in reference to filling such vacancies may be found in sections 3551, 3552 and 3758, Kentucky Statutes.

In the opinion in this case the court held that as the board of council had provided by ordinance for the appointment of a police judge that when a vacancy occurs the said board had the power to fill it by appointment for the remainder of the term   That section 3758 Kentucky Statutes only authorizes the Governor to fill a vacancy in the office of police judge,, "where there is no provision of law for filling the same."

We may reasonably conclude from the language of this opinion that the Governor would have the right to fill a vacancy in the

office of justice of the peace, and other offices mentioned in section 3758—except the office of police judge, which may be filled as provided in sections 3551 and 3552, Kentucky Statutes—but as these questions so often come before the Governor, and it is important for the due execution of the law that he be safely guided on this question, we respectfully ask the court to modify the opinion or broaden the same so as to clearly define the duties of the Governor in filling the appointments of officers other than the office of police judge.

OPINION OF THE COURT BY JUDGE PAYNTER.—REVERSING.

In March, 1903, a vacancy occurred in the office of police judge of Nicholasville, a city of the fourth class, by the death of the incumbent, T. B. Crutcher. On the 20th of that month the board of council appointed the appellant, John Traynor, to fill the vacancy, and issued to him a certificate of appointment. On the 23d of the same month it was presented to the Honorable J. C. W. Beckham, with the request that he, as Governor of the Commonwealth of Kentucky, issue to him a commission authorizing him to enter upon the discharge of the duties of the office to which he had been appointed. The Governor declined to issue the commission. This action was instituted by the appellant against the appellee, asking that a mandamus be issued to compel the Governor to issue a commission to him.

Three questions are presented on this appeal: (1) Did the board of council have the right to make the appointment? (2) Was it the duty of the Governor under the law to issue the commission? (3) Have the courts authority to issue a mandamus against the Governor to compel him to issue the commission?

Among other provisions, section 152 of the Constitution contains the following: "Vacancies in all offices for the State at large, or for districts larger than a county, shall be filled by appointment of the Governor; all other appointments shall be made as may be prescribed by law."

It will be observed that by this provision of the Constitution the exclusive authority is conferred upon the Governor to fill vacancies in all offices for the State at large, or for districts larger than a county. Vacancies in other offices shall be filled as prescribed by law, which means in such manner as the General Assembly may provide. Section 3551, Kentucky Statues, reads as follows: "If a vacancy shall occur in any office which the board of council has the right to fill by appointment, such vacancy may be filled by the board for the remainder of the term of such vacant office." Section 3552 reads as follows: "If a vacancy shall occur in any elective office, including the office of councilman, such vacancy shall be filled by the board of council, subject to the provisions of the Constitution applicable thereto. If the election of any elective officer in cities of this class be contested, such contest shall be conducted and determined as provided by law in cases of the election of county officers." The office of police judge may be filled by election or by appointment of the board of council, as the board may determine by ordinance. Section 3510, Kentucky Statutes. Where the board of council shall have provided by ordinance, as required by section 3510, for the appointment of police judge, then, under section 3551, if a vacancy occurs, the board of council may, by appointment, fill it for the rest of the term. If it is made elective, then the board of council is authorized to fill it subject to the provisions of the Constitution applicable thereto. Whether the office of police judge is filled by election or by appointment, if a vacancy occurs therein, it is to be filled by the board of council. Sections 3551 and 3552 were enacted subsequent to section 3758, which reads as follows: "The following officers shall have commissions issued to them by the Governor, that is to say, secretary of

state, register of the land office, auditor of public accounts, treasurer, commissioner of agriculture, labor and statistics, superintendent of public instruction, judges of the court of appeals, clerk of the court of appeals, judges of the circuit courts, county judges, police judges, railroad commissioners, Commonwealth's attorney, justices of the peace, notaries public, and all officers of the militia of rank and grade higher than and including the rank and grade of captain. Should a vacancy occur in any of said offices, by reason of the death, resignation or removal of the officer, or from any other cause, or should a like vacancy occur in any other office where there is no provision of law for filling same, such vacancy shall be filled by the appointment of the Governor, subject to the provisions of the Constitution applicable thereto." As sections 3551 and 3552 provide for the filling of a vacancy in the office of police judge, they control, because section 3758 only authorizes the Governor to fill a vacancy in the office of police judge "where there is no provision of law for filling the same." It follows, therefore, the board of council had the right to fill the vacancy.

When a police judge has been duly appointed or elected, it is made the duty of the Governor, by section 3758, to issue such one a commission authorizing him to enter upon the discharge of the duties of the office; for it is written in that section that certain officers (including police judges) "shall have commissions issued to them by the Governor."

The third and last question involved is more delicate and difficult of solution. It is one upon which the supreme courts of the States of the Union hold widely divergent opinions, which have been expressed in a plausible, scholarly and forceful manner. These differences of opinion result from the fact that our national and State govern-

ments are divided into judicial, legislative and executive branches. To maintain the independence and efficiency of each, one must not usurp or encroach upon the rights of the others. Each must steadfastly pursue its constitutional and other duties with due regard and consideration of the other branches of government. In the matter of enacting laws, the legislative department is supreme, and the other branches must obey them. It is the business of the executive department to enforce the laws thus enacted. To determine whether legislative enactments are violative of the organic law, to interpret the laws, and decide controversies is the peculiar province of the judiciary. It is no encroachment upon the rights of the Congress for the Federal courts to determine whether or not its enactments are constitutional. Those courts time and again have done so. Neither is it an encroachment upon the rights of the legislative branch of State governments for their courts to declare legislative acts to be in violation of State constitutions. State courts frequently do so. The assertion of individual rights often calls in question the validity of legislative enactments, and the courts never allow an unconstitutional enactment to stand in the way of the enforcement of such rights. This court has likewise had in review executive acts in determining the rights of individuals, and has not failed to determine whether they were valid or invalid. In Bruce v. Fox, 1 Dana, 447, the court decided the act of the Governor in appointing Horatio Bruce Commonwealth's attorney to be void. In Justices of Jefferson County v. Clark, 1 T. B. Mon., 86, it held the appointment by the Governor of a justice of the peace to be void. In Page v. Hardin, 8 B. Mon., 648, the court held invalid the act of the Governor declaring a vacancy in the office of the Secretary of State, and appointing another to fill it. The courts regard

that they are acting within their appropriate sphere under our system of government when they pass upon the constitutionality of an act, or declare upon the validity of an act of the executive department. In those cases the court did not pretend to have direct control over the action of the legislative or of the executive departments. They passed upon the validity of the act affecting private rights. Attention has been called to instances of the exercise of judicial power over legislative and executive acts to show that the judiciary has in certain cases reviewed and held void such acts.

We pass from the general observations to the question more directly before us. The supreme courts of some of the States have held that a mandamus will not lie to compel a Governor to perform a ministerial act imposed by law, refusing to discriminate between those duties which are governmental and political in their character, involving discretion and judgment, and those which are ministerial, in the performance of which no judgment or discretion need be exercised. The supreme courts of other States discriminate between those duties which are governmental or political in their character, involving discretion and judgment, and those which are ministerial, in the performance of which no judgment or discretion need be exercised. In the latter view we concur. All courts agree that a mandamus will not lie against a Governor to compel the exercise of governmental, political, or discretionary powers. In Page, Second Auditor, v. Hardin, 47 Ky., 648, the court said: "Where, by the Constitution or by the law, the Governor has a discretionary power, or where on any ground his act is made conclusive as to all rights involved, it is, of course, not within the province of a court to inquire into the propriety or impropriety of the act. Such a power

controls all rights which it may affect, and a properly au-
thenticated act done in pursuance of it can not be ques-
tioned, for the reason that there can be no legal right com-
ing in conflict with it. Rights dependent upon a discre-
tionary power can not exist in opposition to it, but termi-
nate at its will. The question, however, whether there is
such a power in a given case, or whether any particular
power or act is of the character referred to, is a judicial
question, whenever the right in litigation before a judicial
tribunal depends upon it and requires its decision." When
the law imposes a duty on the chief executive of a State,
which is ministerial in character, involving neither discre-
tion nor judgment, a mandamus will lie to compel him to
perform it. Section 477, Civil Code, reads as follows: "The
writ of mandamus, as treated of in this chapter, is an order
of a court of competent and original jurisdiction, command-
ing an executive or ministerial officer to perform an act,
or omit to do an act, the performance or omission of which
is enjoined by law; and is granted on the motion of the
party aggrieved, or of the Commonwealth when the public
interest is affected." The language of the Code embraces
all ministerial and executive officers. The Governor is not
excepted from its operation. No man is or should be above
the law. That he should not be is in accord with the spirit
of a republican form of government. There is no royal pre-
rogative or official position in this country which exempts
one from yielding obeisance to the law. There is nothing
in the Constitution which forbids the suing of the Governor.
While courts can not control executive acts of the Governor,
or executive powers conferred upon him, yet they can con-
trol ministerial powers. Ministerial power is certainly in-
ferior to judicial power. If one officer can be controlled
in its exercise, why not another? It may be conferred up-

on one person as well as another. Whether it be conferred upon a Governor of a State, or some minor official is the recipient of it, the exercise of it does not require the exercise of judgment or discretion any more by the one than the other. The question as to whether a mandamus will lie is not determined by the office of the person against whom it is sought, but the nature of the thing to be done. In Marbury v. Madison, 1 Cranch, 170, 2 L. Ed., 60, the court said: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined." It is no more an invasion of the executive department whether the writ be issued against the chief executive than it is when issued against a subordinate executive officer. The difference is only in degree, not in principle. In Great Britain the king is sued, and it is said he always complies with the judgment of the court. The State and Federal Governments are governments of laws, not of men. The citizen only gets the shadow of civil liberty, not in its essence, when he has a legal right and is denied the right to enforce it. The greatest duty of government is to afford such redress. In Kendall v. United States, 12 Pet., 610, 9 L. Ed., 1181, the court recognized the doctrine stated by Chief Justice Marshall in Marbury v. Madison, and said: "The mandamus does not seek to control the Postmaster General in the discharge of any official duty partaking in any respect of an executive character, but to enforce the performance of a mere ministerial act, which neither he nor the President had any authority to deny or control. . . . There are certain political duties imposed upon many officers in the executive department, the discharge of which are under the direction of the President. But it would be an alarming doctrine that Con-

gress could not impose upon an executive officer any duty
they may think proper, which is not repugnant to any rights
secured and protected by the Constitution; and in such
cases the duty and responsibility grows out of and is sub-
ject to the control of the law, and not to the direction of
the President. And this is emphatically the case where
the duty enjoined is of a mere ministerial character. The
law relating to mandamus against a public officer is well
settled in the abstract, the only doubt which arises being
whether the facts regarding a particular case bring it with-
in the law which permits the writ to be issued, where a
mere ministerial duty is imposed upon the executive of-
ficer, which duty he is bound to perform without any fur-
ther question. If he refuse under such circumstances, man-
damus will lie to compel him to perform his duty." In
Page v. Hardin, the court said: "There can be no reasonable
ground for denying it the power and duty of declaring upon
the legal validity of any act of the executive department,
whether done by an inferior or by the supreme executive
officer. The executive department and all its officers are
as much bound by the constitutional laws as the legisla-
tive, and have no more power to violate the rights of in-
dividuals secured by the laws. The power, obviously ju-
dicial, of ascertaining and enforcing the legal rights of in-
dividuals, is, in effect, the power of protecting those rights
from violation by the act or authority either of individ-
uals or of the legislative or executive departments; and it
necessarily involves the function of deciding, in every case
properly before it, what are the legal rights of the parties,
and how far in point of law—that is, under the constitu-
tion and laws—those rights have been affected by any and
every act relied on for their support or destruction." In
United States v. Blaine, 139 U. S., 306-319, 11 Sup. Ct.,

607, 35 L. Ed., 183, the court said: "The writ of mandamus can not lie in a case where its effect is to direct or control the head of an executive department in the discharge of an executive duty involving the exercise of judgment or discretion. When, by special statute or otherwise, a mere ministerial duty is imposed upon the executive officers of the government—that is, a service which they are bound to perform without further question—then, if they refuse, the mandamus may be issued to compel them."

By some of the courts which hold that a mandamus will not lie it is urged that, if the Governor opposes the judgment of the court, it can not be enforced, because he has entire control of the militia. A court should not anticipate that the Governor will not obey its judgment. If there was a well-grounded fear that a Governor would resist the enforcement of the judgment, that should not excuse the court for a failure to perform its duty by adjudging to an individual the rights which the law of the land vouchsafed to him. By some courts it is urged that the only relief that can be obtained is by impeachment or an appeal to the electors. These courses may result in the removal of the Governor from office, or in supplanting him by another, but it absolutely gives no relief to the individual whose rights have been invaded or denied. He can only appeal to the judiciary for the protection of his individual rights. The public may have recourse to other remedies. On the general question of the rights of the judiciary to compel executive officers by writ of mandamus to perform ministerial duties, we quote with approval from the dissenting opinion of Chief Justice Agnew in Hartranft's Appeal, 85 Pa., 433, 27 Am. Rep., 667. He said: "It is said the Governor is the representative of the people, and therefore not responsible. This is true of executive duties, for therein

the Constitution, the adopted will of the people, is his warrant of authority; but it is untrue of judicial powers, for therein the judiciary represents the people by the same warrant of authority; and, if he violate the law, which it is the province of the judiciary to enforce, by their authority, he is liable to the law. In a government of law instituted by a free people for their own benefit, there is no royal prerogative to do anything wrong, and therefore there can be no representation of their dignity, such as can strike down their law, and prevent its administration by its appropriate functionary." The court is of the opinion that the act of issuing the commission which is enjoined by the law is purely ministerial, and the writ of mandamus will lie to compel the Governor to perform it.

This opinion is not predicated upon the idea that the Governor does not desire to comply with the statute, but to announce the rule which the judiciary will follow. The Governor only desires to be advised as to the proper interpretation of the statute, and, when interpreted, will cheerfully discharge his duty under it.

The judgment is reversed for proceedings consistent with this opinion.

Judges O'Rear and Barker dissent from so much as awards a mandamus.

The court delivered the following response to the appellee's petition for rehearing:

From the conclusion of the court in Daugherty v. Arnold, 110 Ky., 1, 22 R., 1504, the Governor has authority to fill vacancies in the office of justice of the peace by appointment.