## LUTZ *v.* POST, GOVERNOR OF PORTO RICO.

### APPEAL from the District Court of Ponce.

No. 314.—Decided December 24, 1908.

MANDAMUS—STATUTORY CONSTRUCTION—CERTIFICATES OF OFFICIAL DOCUMENTS.—
The Act of March 12, 1908, to fix certain fees for issuing certified copies of official documents has no reference whatever to *mandamus,* nor to the Governor of Porto Rico, and only relates to the amount of fees to be paid by parties securing copies of official documents from the department where they are deposited or archived.

ID.—ALTERNATIVE WRIT—APPLICATION DENIED WITHOUT ISSUING ALTERNATIVE WRIT.—Where an application for the writ of *mandamus* is insufficient and does not state facts sufficient to constitute a cause of action, a court may deny the application without issuing the alternative writ.

ID.—JURISDICTION OF COURTS TO ISSUE THE WRIT OF MANDAMUS AGAINST THE GOVERNOR—EXECUTIVE OR MINISTERIAL ACTS.—The district courts and the Supreme Court have jurisdiction to issue the writ of *mandamus* against the Governor of Porto Rico to compel him to comply with ministerial or executive duties which do not require the exercise of any discretion.

ID.—PERSONALITY OF THE PETITIONER—EDITOR OF A NEWSPAPER.—The editor of a newspaper, as such, is without the necessary capacity to commence proceedings to secure a writ of *mandamus* for the purpose of obtaining a certified copy of an official document unless it is shown that he "is a party beneficially interested" and that he has a special interest in the matter.

ID.—PERSONALITY OF THE PETITIONER—GENERAL INTEREST AS A CITIZEN.—Such a general interest as any citizen of the Island might have in a public matter is not sufficient to qualify a person to become the plaintiff in a suit for *mandamus* in a case like the one at bar.

ID.—MINISTERIAL OR EXECUTIVE ACT—DISCRETION.—In the case at bar the court held that the giving or withholding by the Governor of Porto Rico of copy of the document in question constituted an act of discretion on the part of that official.

ID.—PRIVILEGED COMMUNICATION.—In the case at bar the court held that the written answer given by the district judge to the Governor, in reply to certain charges made against him by several attorneys, is not a privileged communication in such a sense as to exclude it from the operation of the law of *mandamus.*

REFUSAL TO ISSUE WRIT OF MANDAMUS—PREJUDICIAL TO THE PUBLIC INTEREST.—
The writ of *mandamus* must be refused when the public interests would be prejudiced by its issuance, or when to issue it would be to disturb official action, or create disorder or confusion, or when the rights of third parties would be thereby prejudiced.

The facts are stated in the opinion.
*Mr. José Tous Soto* for appellant.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This is a suit, brought by Mr. R. R. Lutz, the editor of the Ponce Eagle, a newspaper published in the city of Ponce, P. R., against Regis H. Post, the Governor of Porto Rico, seeking an alternative writ of *mandamus,* directing the said defendant to show cause why a peremptory writ should not issue against him, commanding him to furnish the plaintiff a certified copy of a certain document alleged to be on file in the archives of his office.

From the record it appears that some time since certain members of the bar, practicing in the District Court of Mayagüez, formulated a series of charges against Isidoro Soto Nussa, the judge of that district, and presented the same to the Governor of the Island, seeking the suspension or removal of the judge from office. That the "Ponce Eagle," a newspaper whose editor is the appellant herein, procured a copy of these charges from some unknown source and published the same in its columns. That afterwards the said Soto Nussa made an answer to the charges preferred against him and filed it with the Governor of Porto Rico in his own defense. The "Ponce Eagle," being unable in any other way to obtain a copy of the said answer, on the 2d of July, demanded of the Governor, "in accordance with the law fixing certain fees approved on the 12th of March, 1908," Laws of 1908, pages 144 and 145, that he cause to be issued to the said newspaper a certified copy of the said answer filed by the said judge. To this the Governor replied on the 6th of July that he "did not care to furnish such copy."

Thereupon the plaintiff on the next day made application to the Hon. Martin E. Gill, District Judge of the Ponce District, for an alternative writ of *mandamus* as hereinbefore stated. On the 29th of the same month the said judge made an order refusing the application because the facts set forth in the petition did not show that the applicant had a *prima facie* right to the issuance of the alternative writ.

From this order the plaintiff, R. R. Lutz, took an appeal to this court and filed the transcript herein on the 14th of September last. After the usual delays in the filing of briefs the case was called for hearing on the 4th of the present month and duly heard, on oral argument by the *fiscal* of this court in behalf of the appellee, and on the written briefs of both parties.

In the outset it may be remarked that the "act to fix certain fees" (Laws of 1908, p. 144, referred to in the application), has no reference whatever to *mandamus,* nor to the Governor of Porto Rico, and only relates to the amount of fees to be paid by the parties securing copies of official documents from the departments where they are deposited or archived.

A preliminary question to any discussion of the matter presented by the counsel in this case is: Should not the alternative writ have been issued and the return have been made by the defendant, and the questions of jurisdiction, personality, discretion and privilege left for consideration and determination by the judge on the trial of the cause? This might have been the course taken and it would not have been improper to have done so. But that does not necessarily imply that the court erred in refusing, on the face of the facts set forth in the application, to issue a rule to show cause for the alternative writ of *mandamus.* If the application failed to set forth such a state of facts as could form a proper basis for the final issue of the peremptory writ, it was unnecessary to issue against the defendant, a rule to show cause or to award an alternative writ of *mandamus.* Such a proceeding might well be considered under such circumstances as a vain and useless form; and the law never requires a court to perform such an action.

The court will examine a petition for *mandamus* and unless probable cause appears therefrom, no citation will issue and the case will be dismissed. (*High Ex Rem.,* par. 9; *People* v. *McConnell,* 146 Ill., 532; *I. W. C. Co.* v. *Pearson,* 140 Ill., 434;

*Dement* v. *Rocker,* 726 Ill., 191; *Board of Supervisors* v. *People,* 110 Ill., 579; *Negrón* v. *Supervisor,* decided by the Supreme Court of P. R., 5th of Nov., 1906; *Thompson* v. *Baker;* 38 S. W. R., 21, Supreme Court of Tex.; *Hume* v. *Schintz,* 36 S. W. R., 429, Supreme Court of Tex.)

Lord Mansfield, in summing up a discussion of a similar question, says: ''But the court ought to be satisfied that they have ground to grant a *mandamus;* it is not a writ that is to issue of course, or to be granted merely for asking.'' (*Rex* v. *Askew,* Burr, 2186.)

The application must necessarily serve as a basis for the alternative writ which will closely follow its allegations, and unless they are sufficient the issuance of the alternative writ would be in vain and could not support the judgment of the court in the final award of the peremptory writ; and hence it is a proper practice to deny the writ in the first place where the application would be subject to a general demurrer. We must hold then that the district judge, in denying the alternative writ, pursued the proper practice, if the application was really defective as he found to be the case.

The first question that properly arises in the consideration of the case, as presented by counsel, is one of jurisdiction. Has the District Court of Ponce jurisdiction to issue an alternative writ of *mandamus* against the Governor of Porto Rico, directing him to show cause why a peremptory writ should not issue commanding the delivery by him, or by the person in charge of his archives of the certified copy required of a document on file in his office?

There is no doubt that the District Courts of Porto Rico, as well as the Supreme Court and the several judges thereof, generally have the power to issue writs of *mandamus* in proper cases; that power having been expressly granted them by statute. (Act to establish the Writ of *Mandamus,* approved March 12, 1903; Laws of P. R., 1903, pp. 113 *et seq.*) Then the question propounded resolves itself into the more difficult one of whether or not the writ of *mandamus,* alter-

native or peremptory, will issue in any case against the Governor of Porto Rico.  In some of the States, among them Alabama, California, Colorado, Kansas, Kentucky, Maryland, Montana, Nebraska, Nevada, North Carolina, Ohio and Wyoming, it has been held that *mandamus* lies against the governor in like cases as against other officers.  And in others, notably Arkansas, Florida, Georgia, Illinois, Indiana, Louisiana, Maine, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, Rhode Island, Texas and Tennessee, it has been held that the governor of a State is exempt in all cases from this exacting writ.  In 18 other States the question does not seem to have been decided in the courts of last resort.  So it appears that the courts of last resort in the greater number of States have taken the latter view of the question.  But the courts of such States base their opinions, exempting governors of States from the force of this writ, on the fact that in nearly all, if not all, of the State constitutions the powers of government are divided into three distinct departments: Executive, legislative and judicial; and that neither should interfere with the other in any manner.  Such is not the case in this Island.  Both the courts and the Governor derive their powers from the Organic Act, but the division into departments is lacking.  But is is well to examine both sides of this question at least briefly.  What says the majority?

The leading and probably the best opinion, holding that the courts of a State have no jurisdiction to compel by *mandamus* the governor to perform a duty imposed upon him by law, whether it be ministerial or political, was written in 1874 by Judge Cooley and is reported in 18 American Reports, page 89 *et seq*.  He discusses the question at some length announcing among other propositions the following:

"And that there is such a broad general principle seems to us very plain.  Our Government is one whose powers have been carefully apportioned between three distinct departments, which emanate alike from the people, have their powers alike limited and defined

by the Constitution, are of equal dignity, and, within their respective spheres of action, equally independent. One makes the laws, another applies the laws in contested cases, while the third must see that the laws are executed. This division is accepted as a necessity in all free governments, and the very apportionment of power to one department is understood to be a prohibition of its exercise by either of the others. The executive is forbidden to exercise judicial power by the same application which forbids the courts to take upon themselves his duties.''

\*       \*       \*       · \*       \*       \*       \*

''There is as to all the authority specially confided to the governor, whether by the Constitution or the laws, no safe or logical doctrine but this: 'That reasons of a conclusive nature must be presumed to have been found, requiring the particular authority to be confided to the chief executive as one properly and peculiarly, if not exclusively, pertaining to the department which he represents.' ''

\*       \*       \*       \*       \*       \*       \*

''But it is said that this conclusion will leave parties who have rights, in many cases, without remedy. Practically, there are a great many such cases, but theoretically there are none at all. All wrongs, certainly, are not redressed by the judicial department.''

\*       \*·       \*       \*       \*  ·       \*       \*

''The law must leave the final decision upon every claim and every controversy somewhere, and when that decision has been made, it must be accepted as correct. The presumption is just as conclusive in favor of executive action as in favor of judicial. The party applying for action, which, under the Constitution and laws, depends on the executive discretion, or is to be determined by the executive judgment, if he fails to obtain it, has sought the proper remedy and must submit to the decision.'' (*Sutherland* v. *Governor*, 29 Mich., 320.)

It is also contended and made the basis for denying the jurisdiction of the courts to issue a *mandamus* against the governor of a State that, if he failed or refused to obey the mandate of the court, obedience could not be enforced since the governor is the Commander in Chief of the militia and could defy the judicial power to arrest and punish him for contempt. Such an argument is unworthy of consideration regardless of our high respect for the source from which it emanates. The question is one solely of jurisdiction; and the

jurisdiction of a court never originates in or depends upon its physical power to enforce its judgments. It is the sworn duty of the governor to see that the laws are faithfully executed, and it is not to be presumed that he will so far forget the great responsibilities if his high office as not only to neglect to execute, but as to defy the judgments of the courts duly rendered in their interpretation of the laws. Such a presumption cannot be entertained for a moment.

This whole argument, able as it seems, is fully met and controverted in the opinion written by Judge Beard, only two years ago, in the case of *Irvine* v. *Brooks,* decided by the Supreme Court of Wyoming, found in 6th L. R. A. N. S., 751 *et seq.*

In that case the arguments in favor of the proposition that the writ can in proper cases issue even against the governor of a State are presented as follows:

"The duty being ministerial, we think the weight of authority and the better reasoning is in favor of the jurisdiction of the court to issue the writ, and is not an assumption of executive powers. The court does not attempt to perform the act, but simply interprets the provisions of the Constitution and laws under which the governor is required to act. That is the peculiar province of the judiciary and its interpretation of the laws is as binding upon the executive as upon any other citizen. In discussing this question the Supreme Court of Ohio, in the case of *State ex rel. Whiteman* v. *Chase,* 5 Ohio St., 528, said: 'It is claimed, on the part of the defense, that inasmuch as the Government is, by the Constitution, divided into three separate and coordinate departments, the legislative, the executive, and the judicial; and inasmuch as each department has the right to judge of the Constitution and laws for itself, and each officer is responsible for an abuse or usurpation in the mode pointed out in the Constitution, it necessarily follows that each department must be supreme within the scope of its powers, and neither subject to the control of the other for the manner in which it performs, either its legal or constitutional duties. This argument is founded on theory rather than reality. That each of these coordinate departments has duties to perform in which it is not subject to the controlling or directing authority of either of the others must be conceded. But

this independence arises, not from the grade of the officer performing the duties, but by the nature of the authority exercised . * * * .' In *Marbury* v. *Madison*, 1 Cranch, 170, 2 L. ed., 71, Chief Justice Marshall said: 'It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined,' and further on in the same opinion the court says: 'But there is nothing in the nature of the chief executive office of this State which prevents the performance of some duties merely ministerial being enjoined on the governor. While the authority of the governor is supreme in the exercise of his own judgment or discretion, the authority of the judiciary of the State is supreme in the determination of all legal questions involved in any matter judicially brought before it.' In that case the application was for a writ of *mandamus* against the governor to require him to issue a certificate to a bank as a branch of the State Bank of Ohio, and it was held that the duty to do so, imposed upon the governor, was ministerial, and that the court had jurisdiction; although the writ was denied for other reasons.

"In the case of *Magruder* v. *Swann*, 25 Md., 173, which was an application for a writ of *mandamus* against the governor to require him to issue to the petitioner a commission as circuit judge, after reviewing the decisions on the question of jurisdiction the court said: 'The governor. in his political and executive duties requiring the exercise of his judgment and discretion, is entirely independent of any other authority. But all judicial power is as absolutely. committed to the judiciary department as political or executive power is to the governor. Among these judicial duties is the decision of controversies between man and man, whether they involve the right to office, life, liberty or property, or arise under the provisions of the Constitution, statute or common law.' The court held that it had jurisdiction, and ordered the writ to issue. This decision was followed. and approved in *Groome* v. *Gwinn*, 43 Md., 572. We cite. the following cases, but without reviewing them here, which hold that duties such as are imposed upon the governor in this case are merely ministerial, and that the court has jurisdiction to issue a writ of *mandamus* against the governor requiring their performance. *Greenwood Cemetery Land Co.* v. *Routt*, 17 Colo., 156; 15 L. R. A., 369; 31 Am. St. Rep., 284; 28 Pac., 1125; *Chumasero* v. *Potts*, 2 Mont., 242; *People ex rel. McCauley* v. *Brooks*, 16 Cal., 11; *Middleton* v. *Low*, 30 Cal., 596; *Harpending* v. *Haight*, 39 Cal., 189; 2 Am. Rep., 432; *Martin* v. *Ingham*, 38 Kan., 641: 17 Pac., 162; *State ex rel. Bates* v. *Thayer*, 31 Neb., 82; 47 N. W., 704; *State ex rel. Wright* v. *Savage*, 64 Neb.,

684; 90 N. W., 898; 91 N. W., 557; *Cotten* v. *Ellis*, 52 N. C. (7 Jones
·L.), 545; *Traynor* v. *Beckham*, 116 Ky., 13; 74 S. W., 1105; 76 S. W.,
844. In Nevada, the court took jurisdiction, although the question
was not raised or discussed. *State ex rel. Wall* v. *Blasdel*, 4 Nev.,
241; *State ex rel. Laughton* v. *Adams*, 19 Nev., 370; 12 Pac., 488.
See also *State ex rel. Lockwood* v. *Kirkwood*, 14 Iowa, 162; and *State*
v. *Foster*, 38 Ohio St., 599." (*Irvine* v. *Brooks*, 6 L. R. A. N. S.,
pp. 763-766.)

If the number of courts is to be counted the position taken
by Judge Cooley, having 16, would be deemed to be sustained
by the weight of authority. But if we are to consider the rea-
sons advanced in the opinions as carrying with them the
weight of authority the decision must rest with the 12 courts
which maintain the doctrine announced in the Wyoming case
and supported by the decisions of Marshall, Miller and the
Supreme Court of the United States

From all the opinions which we have been able to examine
it appears to us that the great weight of argument and rea-
son is in favor of holding the governor in proper cases amen-
able to the writ of *mandamus* like any other State officer of
the executive department. Ours is a Government of law and
all officers, from the highest to the lowest, are bound to obey
it, without question. (*T. & C. R. Co.* v. *Moore,* 36 Ala., 371;
*Middleton* v. *Low,* 30 Cal., 596; *Greenwood C. L. Co.* v. *Routt,*
17 Colo., 156; *Martin* v. *Ingham,* 38 Kan., 641; *Traynor* v.
*Beckham,* 116 Ky., 13; *Magruder* v. *Swann,* 25 Md., 173; *Chu-
masero* v. *Potts,* 3 Mont., 364; *Bates* v. *Thayer,* 31 Neb., 82;
*Loughton* v. *Adams,* 19 Nev., 370; *Cotten* v. *Ellis,* 52 N. C.,
545; *State* v. *Chase,* 5 Ohio, 528; *Irvine* v. *Brooks,* Wyo., 84
Pac. Rep., 488, and 6 L. R. A. N. S., p. 750, and extensive note.)

But all courts are unanimous in disclaiming any power or
jurisdiction to coerce the governor to perform any act requir-
ing the exercise of his judgment or discretion; all such acts be-
ing deemed political in their nature. (*Coms. of Patents* v.
*Whiteley* (4 Wall) 71 U. S., 522; *Decatur* v. *Paulding* (14 Pet)
39 U. S., 515; *Berryman* v. *Perkins,* 55 Cal., 483; *Hatch* v.

*Stoneman*, 66 Cal., 632; 6 Pac., 734; *Householder* v. *Morrill*, 55 Kan., 317; 40 Pac., 664; *Miles* v. *Bradford*, 22 Md., 170; 85 Am. Dec., 643; *State ex rel. Eves* v. *Rickards*, 16 Mont., 145; 28 L. R. A., 298; 50 Am. St. Rep., 476; 40 Pac., 210; *State ex rel. State Journal Co.* v. *Boyd*, 36 Neb., 60; 53 N. W., 116; *State ex rel. Cromelien* v. *Boyd*, 36 Neb., 181; 19 L. R. A., 227; 54 N. W., 252.)

In California the governor has always been held amenable to the writ of *mandamus* in the performance of a ministerial duty; although the Constitution divides all the offices of the State into three separate, independent and distinct departments. In a very able opinion rendered by Mr. Justice Rodes, in the case of *Middleton* v. *Low*, the court uses the following words:

"The signing of a patent for land, which is required by law to be executed by an officer, to give effect to a sale made by other officers of the Government, and as a means of passing the title of the Government to the purchaser, is purely a ministerial act. In a case where the land sold was the land of the Government making the sale, and all the acts required to be done prior to the issuing of the patent have been duly performed, and the purchaser is competent to purchase, the duty is imperative upon the officer charged with the execution of the patent to execute it, unless the law has vested him with discretionary powers in that respect. The same rule would apply to the governor as to an inferior or subordinate officer. It cannot be said that the governor has the discretion to execute the patent or not, as to him may seem proper, when all the facts appear, showing the legal right of the purchaser to make the purchase, and that he has in fact made the purchase." (*Middleton* v. *Low*, 30 Cal., 596.)

In the Supreme Court of the United States, Mr. Chief Justice Marshall, more than a century ago led the way in declaring the jurisdiction and the duty of courts to issue writs of *mandamus* to officers of the executive departments of the Government in proper cases, that is, to compel the performance of a merely ministerial duty. In the celebrated case of *Marbury* v. *Madison* (1 Cranch) 5 U. S., 170, he clearly announces

the proposition that: "It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done, that the propriety or impropriety of issuing a *mandamus* is to be determined." This has been the keynote of all subsequent decisions in this exalted tribunal; and although it has often been said, as was remarked by Judge Cooley, that this famous opinion is an *obiter dictum* yet it has been quoted so often with approbation that its authority must henceforth remain as unshaken as the rock-ribbed foundations of Gibraltar.

In commenting on this celebrated case and the doctrine established therein the same high court in a much later case through Mr. Justice Miller says:

"If the relator was entitled to the possession of the patent as his property, and it was the plain duty of the secretary to deliver it to him when demanded, then, under all the authorities, and specially the decisions of this court, he is entitled to the remedy he asks.   From the case of *Marbury* v. *Madison*, 1 Cranch, 137, down to the present time, such has been the settled doctrine of this court.   And though it may be said that the opinion of Mr. Chief Justice Marshall in that case was not necessary to the decision made, which was that *this* court had no *original* jurisdiction in that case, the principles of the opinion have since been repeatedly recognized and acted upon in this court, and the case cited with approval in its definition of the circumstances under which persons holding public offices will be compelled to perform certain duties which are merely ministerial. (*Kendall* v. *United States*, 12 Pet., 524; *Decatur* v. *Paulding*, 14 Id., 497; *Kendall* v. *Stokes et al.*, 3 How., 87; *Commissioner of Patents* v. *Whiteley*, 4 Wall., 522.)" (*United States* v. *Schurz*, 102 U. S., Rep., 395.)

What higher or better authority need we seek to follow than the decisions here cited covering a century of jurisprudence.

Then we are amply justified in holding that as to ministerial duties the general principle of allowing relief by *mandamus* against executive officers should be upheld and applied; and the mere fact that it is the Governor of Porto Rico against

whom the relief, by this extraordinary writ, is sought should not impede or deter the courts in or from the exercise of their jurisdiction; since it is well established and cannot be denied that the authority of the courts is supreme in the consideration and determination of all legal questions, judicially submitted to them, within the proper limits of their jurisdiction; and no man is exempt from the operation of the law; and the duty of faithfully executing the laws is incumbent on the governor by virtue of his official oath, and should the relief sought be refused the applicants might be utterly without redress.

.The *second* question which naturally arises, in the consideration of this case, is one of personality on the part of the plaintiff. Has the editor of a newspaper such a right or interest in the document, of which he seeks a copy, as to qualify him as a plaintiff in a *mandamus* suit against the Governor of Porto Rico? Under our Statute the applicant for this writ must be a "party beneficially interested." (See Laws of 1903, p. 114, par. 3 of the *Mandamus* Act.) ·

What interest has the applicant in the document of which he seeks a copy? It is stated that it is sought for publication in the newspaper, conducted by the applicant, as a complement to the information already offered to the public, in said periodical, in regard to the charges made by the bar of Mayagüez against the district judge. In other words it is as a newsgatherer that the applicant seeks the writing of defense made by this official before the Governor of the Island. It will be observed that neither the bar of Mayagüez nor any member of it seeks a copy of the said document.. It would really seem that if any one had an interest in knowing the contents of the written defense set up against their charges it would be the accusers, or some one of them. And it must be further borne in mind that the "Ponce Eagle" is not published within the judicial district of Mayagüez; nor is the editor a resident of that district. Then do editors, as a class, have any more rights in regard to the archives of the public offices than do other

citizens? We opine not. If not then the applicant in this case has no more interest in the subject matter of this suit than any other citizen of Ponce or Porto Rico. This case is very similar to the case of *Colnon* v. *Orr,* in California. In that case the document sought to be inspected was a writing filed by a young lady with the board of directors of an insane asylum, assailing the character of the medical superintendent. The court refused a *mandamus* for an inspection of the document saying that is is not every such document that becomes in such circumstances a public record to which any citizen may have access at pleasure; and that while it is a right of a citizen of the State to inspect the public records, at proper times, "nevertheless a writ of mandate to enforce that right cannot be always invoked." It is not every citizen that can invoke this writ for such a purpose at pleasure. He must show himself *beneficially interested* and that there is not a plain, speedy and adequate remedy otherwise given by law—or the *mandamus* will be refused. (*Colnon* v. *Orr,* 71 Cal., 43-45.) Surely such a general interest as any citizen of the Island might have in the matter is not sufficient to qualify a person to become the plaintiff for in a suit for *mandamus* in a case like the one before us, and if editors as a class have any special rights or interests in such cases, no text or decision sustaining such a claim has been pointed out to us; nor have we been able to find any authority for such a claim in any law book to which we have been able to refer, in a somewhat diligent search instituted and prosecuted since the submission of this matter to our consideration. Then the district judge would have been justified by the want of personality on the part of the plaintiff in refusing the alternative writ sought herein.

The *third* question arising, in regular course, is whether or not the act sought to be compelled, on the part of the Governor, is one merely ministerial in its nature, not involving any discretion on the part of the said high officer, and hence within the purview of the writ of *mandamus*.

A ministerial act or duty, to be performed by an executive

officer, is defined by Chief Justice Chase as fololws: "A ministerial duty, the performance of which may, in a proper case, be required of the head of a department, by judicial process, is one in respect of which nothing is left to discretion. It is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law." (*State of Miss.* v. *Johnson,* (4 Wall) 71 U. S., 498.)

A ministerial duty may then be said to be one which must be performed under a given state of facts, in a prescribed manner, in obedience to legal authority, and without the exercise of the discretion of the actor as to the propriety of the action. (*Marcum* v. *Rallot Commissioners,* 42 W. Va., 263; 26 S. E. Rep., 281; 36 L. R. A., 296.)

In a textbook often quoted we find the following definition of such an act:

"A ministerial duty has been variously defined. The most important criterion, perhaps, is that the duty is one which has been positively imposed by law, and its performance required at a time and in a manner or upon conditions, which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion." (Mechem, Pub. Offi., sec. 657.)

Then had the application been made, by some person having a sufficient interest in the subject-matter, against the secretary or some subordinate officer having proper custody of the document in question, would the issue of the certified copy sought have been a mere ministerial act, and one for the doing of which a *mandamus* would lie? It is apparent from the record that such a copy is not sought for the purpose of using the same in evidence in any suit or action in any court of justice, but merely to publish the same as news, perhaps to gratify public curiosity, and to create a market for the newspaper in whose columns it might be printed. From the very nature of the document itself, as described in the application, it must appear that the giving or refusing of a copy of the

same involved an act of discretion on the part of the officer in whose charge it is deposited. Many courts have "repeatedly held that when the exercise of a discretion is involved, a writ of *mandamus* will not be allowed." (*People* v. *Knickerbocker,* 114 Ill., 547.)

Then on this ground too the action of the judge in refusing the writ could be amply justified.

The authorities on this point are so very numerous that only a few of the leading ones will be cited. (*State* v. *Hamil,* 97 Ala., 107; 11 So. Rep., 892; *Walker* v. *Superior Court of San Francisco,* 139 Cal., 108; *Towle* v. *State,* 3 Fla., 202; *State* v. *Tippecanoe Co.,* 131 Ind., 90; 30 N. E. Rep., 892; *Scripture* v. *Burns,* 59 Iowa, 70; 12 N. W., 760; *Young* v. *Beckham,* 115 Ky., 246; 72 S. W. Rep., 1092; *State* v. *Board Coms.,* 115 La., 684; *State* v. *Rotwit,* 13 Mont., 29; *People* v. *Westchester Co.,* 12 Barb., 446; *People* v. *Atty. Gen.,* 41 Mich., 728; *Com.* v. *Pittsburg,* 34 Pa. St., 496; *State* v. *Miller,* 1 Tex., 596; *Auditorial Board* v. *Hendrick,* 20 Tex., 60; *Eubank* v. *Boughton,* 98 Va., 499; 36 S. E. Rep., 529; *Kendall* v. *United States,* (12 Pet).37 U. S., 524; *Decatur* v. *Paulding,* (14 Pet) 39 U. S., 497; *Gaines* v. *Thompson,* (7 Wall) 74 U. S., 347; *United States* v. *Schurz,* 102 U. S., 402; *José Pilar Santiago* v. *Feuille,* decided by the Supreme Court of P. R., 16th of April, 1906; *Zavala* v. *Ex. Council,* decided by the Supreme Court of P. R., 23d of June, 1905; *Negrón* v. *Supervisor,* decided by the Supreme Court of P. R., 5th of Nov., 1906.

The fourth question, which can be raised in the consideration of this case, is the one of privilege. Is the document referred to, as contended by the *fiscal,* a privileged communication, or one concerning which no official custodian thereof can be compelled to testify, so as to disclose its contents?

The document cannot be considered a privileged communication, in such a sense as to exclude it from the operation of the law of *mandamus.* Indeed the term "privileged communication" has reference to the libel law, in requiring malice

to be shown in uttering the slanderous words, although in other cases, and under different circumstances, such a document or statement might be considered libelous *per se.* The same expression relates to communications made between persons occupying toward each other certain confidential relations, such as attorney and client; and the person to whom certain matters are confided, either verbally or in writing, between persons in such confidential relations, is not permitted, much less compelled, when giving testimony as a witness, to divulge them. But this document cannot be said to fall within that class. (23 Am. & Eng. Enc. of Law, p. 51 and notes; 1 Greenleaf on Evidence, sec. 251.)

- The distinction between privileged communication and others not so privileged is not drawn under the law of *mandamus;* only in so far as the disclosure of a communication, which under the circumstances indicated might be classed as privileged, may be deemed an act involving discretion instead of a mere ministerial duty required by the law to be performed on the request of any party interested. And on this ground alone the judge *a quo* would not have been justified in denying this application for *mandamus.*

Finally we must observe that the writ of *mandamus* ought always to be refused when the public interest would be prejudiced by its issuance, or when to issue it would disturb official action or create disorder or confusion, or when the rights of third parties would be thereby prejudiced; and it should only be issued solely in cases of necessity to prevent injustice or great damage; and that in doubtful cases it should always be refused. (26 Cyc., pp. 146 and 149 and cases cited.)

Then on careful consideration of the record presented here, and after reviewing the authorities cited in the briefs of counsel, and many others not referred to by either party, we must arrive at the conclusion that the case presented in the application to the district judge of the Ponce district does not justify the issuance of the alternative writ of *mandamus;* and

that the order made by the said judge denying the same was correct and should be in all things affirmed.

*Affirmed.*

Justices Hernández and Figueras concurred.

Mr. Justice Wolf concurred in the conclusions of the opinion of the court regarding jurisdiction, lack of interest on the part of the petitioner, and the privileged character of the communication, subject matter of this action, and in the judgment, for the reasons stated in his concurrent vote.

Mr. Chief Justice Quiñones did not take part in the decision of this case.

#### CONCURRING OPINION OF MR. JUSTICE WOLF.

I agree substantially with the court that the weight of authority is with the contention that the courts of Porto Rico, in a proper case, have jurisdiction to issue a writ of *mandamus* against the Governor. I likewise agree with the majority opinion in its discussion of the lack of legal interest in the appellant to make the application, and also in the discussion of the question of a privileged communication, the fourth point in order in the opinion.

But it has seemed to me that the most essential reason for denying the application is a little more extensive and far reaching than the decision of whether the Governor of Porto Rico may exercise a discretion in determining whether he will or not accede to the demands of the appellant. It is undoubtedly true that the Governor has a discretion in the sense that he may choose to show to a citizen any communications that come into his hands during his incumbency, be it an inquiry from the President of the United States, a complaint from a mayor of a town or a letter from a member of his family. If he is to make an appointment or a removal he frequently counsels with someone, and the person consulted may make a verbal communication or write a letter. In either event, the

Governor may elect to give his information to the public and in that way may be said to exercise a discretion.  If some officer or private person makes a report in regard to some office-holder the Governor may tear it up or, if he is careful, may file it away for future reference.  The answer of an official against whom a complaint is made, elicited at the instance of a Governor, stands in no different position.  The writ of *mandamus* cannot control the action of the Governor in this class of cases.

Section two of the Law of *Mandamus,* Session Laws 1903, page 114, provides:

"The writ of *mandamus* may be issued by the Supreme Court or the district courts, or any justice or judge thereof, during the term or at chambers, to any inferior tribunal, corporation, board or person to compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust or station, but though it may require an inferior tribunal, or any judge thereof, to exercise this judgment, or proceed to the discharge of any of its functions, it cannot control judicial discretion."

The majority opinion is strictly correct when it says that the Law of *Mandamus* can generally be invoked only when a ministerial duty is to be performed but before we reach the division of duties into ministerial and discretional it should first appear that there is a duty.  The law says: "To compel the performance of any act which the law specially enjoins as a duty resulting from an office, trust or station."  It must not only be a duty but one specially enjoined by law.  There is but one current of authority to this effect.  (*State* v. *Fitzpatrick,* 45 La. Ann., 270, and the authorities on pages 278 and 279; *People* v. *Spruance,* 6 Pac., 831; *Puckett* v. *White,* 22 Tex., 560; *Commissioners* v. *People,* 66 Ill., 341; *City of Napa* v. *Rainez,* 59 Cal., 275; Merril on *Mandamus,* par. 57.)  The last-named authority says that the writ will not lie unless "the act desired is of absolute obligation on the part of the

person sought to be coerced." "The action must not only be in the respondent's power to do but it must be his duty to do it. The act must be clearly prescribed and enjoined by law. The duty must be plain and positive." This language was cited with approval of the Supreme Court of Louisiana in the case of *State* v. *Fitzpatrick* (*supra*).

The duties of the Governor are set forth principally in the Foraker Act, and in Title V, Chapter I of the Political Code. There is nothing anywhere to suggest a duty to show an answer made by an official under charges. The Governor is required by law to have a few records kept. These are as follows:

"1. A register of all applications for pardons, reprieves or for commutation of any sentence, with a list of the official signatures and recommendations in favor of each application.

"2. An account of all his official expenses and disbursements, including the incidental expenses of his department, and of all rewards offered or paid by him for the apprehension of criminals and persons charged with crime.

"3. A register of all appointments made by him, with date of commission, name of appointee and predecessor."

No similar duties have been drawn to my attention, but it is certain that the law did not require the Governor to file the answer to Judge Soto Nussa. His power of removal is the power in nearest relation to the duty sought to be invoked by the appellant here. With respect to records in connection with such supposed duty the law is completely silent. The Governor is only required to keep a register of appointments. *Expressio unius est exclusio alterius.*

The contention of appellant apparently had its origin in the supposition that the paper in question was a public document which any citizen had a right to inspect. What are public documents and the rights of the public thereto are partially set forth in the law of evidence. (Sections 45, 47, and

paragraph five of section 40; and partially in the Civil Code, section 1184.)    It would, however, require a violent stretch of imagination, in view of these sections or any other part of the law of Porto Rico to impress upon the answer of Judge Soto Nussa the character of a public document.    As intimated before, the Governor had a personal .discretion to show the answer or not, but there was no legal duty with respect to it, and his action being most incidental to his power of appointment and removal, was outside of the domain of the courts.