14263

BLALOCK v. JOHNSTON, GOVERNOR

(185 S. E., 51)

January, 1936.

*Messrs. Wolfe & Fort,* for petitioner,

*Messrs. A. Ray Godshall* and *C. S. Bowen,* for respondent.

March 30, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The petitioner, J. C. Blalock, commenced this action in the original jurisdiction of the Court against the respondent, Olin D. Johnston, as Governor of the State, praying that a rule be issued to the Governor, directing him to show cause why a peremptory writ of mandamus should not be

granted, requiring him to perform the duty of appointing the petitioner as tax collector for Cherokee County, as required by the special statute referred to in the petition.

The allegations of the petition, so far as necessary to an understanding of the questions presented, are, in substance, that in conformity with an Act of the General Assembly, *i. e.,* Act No. 778, approved April 4, 1932 (37 St. at Large, p. 1362), which amends Section 2868 (1, 2), of the Code of 1932, the Honorable G. W. McKown and the Honorable C. E. Saint-Amand, constituting a majority of the legislative delegation in the General Assembly from the County of Cherokee, formally recommended to the Governor, in writing, the appointment of the petitioner, as a discreet and capable person, as tax collector, and attached to said recommendation certain testimonials showing the fitness of the petitioner to discharge the duties of the office acceptably to the public.

This recommendation, together with the testimonials referred to, was duly presented to and filed with the respondent, and the allegation is made, and not denied, that the Governor has refused to make the appointment as recommended.

The pertinent parts of the Act of the General Assembly, which creates the office of tax collector for Cherokee County, and prescribes the method of appointment, reads as follows:

"Section 1. That there shall be appointed for the County of Cherokee a discreet person to be known as 'Tax Collector,' which appointment shall be made by, and shall be removed for cause by the Governor, upon the recommendation of the majority of the Members of the General Assembly from Cherokee County. * * *

"Section 2. That the term of office of Tax Collector shall be to the 31st day of December, 1932, and thereafter his term of office shall be for one year, subject to removal at any time by recommendation of a majority of the Members of the General Assembly from Cherokee County, or

subject to removal at any time by the Governor for reasons which he may deem sufficient."

On presentation of the verified petition to the Chief Justice a rule was issued against the respondent, and made returnable before the Court. The respondent appeared by counsel and filed a demurrer to the petition and the rule; and also filed a return in the alternative, subject to the demurrer, and without waiving his rights to be heard thereunder.

By the demurrer two questions are presented for our consideration: By the first, the respondent challenges the jurisdiction of the Court to issue the writ of mandamus against the Governor. We shall first dispose of this issue, because, if it should be decided in favor of the respondent, a consideration of the other questions presented by the petition would become unnecessary.

It is a general rule, universally recognized, that a demurrer admits the truth of all allegations of fact in the pleading demurred to, in so far as such allegations are well pleaded.

The mandamus issue is squarely presented for the determination of this Court, and the duty of the Court to decide this issue may not be avoided.

In considering and passing upon the identical question, the Courts of our sister states, under our form of government, recognize the duty as being an extremely delicate one, and undertake its solution with great reluctance. We, too, are conscious of its great gravity and importance.

The question presented here has been discussed ably and learnedly in many cases from other jurisdictions. In fact, it has been presented in some phase to the Courts of last resort of practically every state in the union, and in addition to these has furnished the occasion for frequent adjudications by the Federal Courts.

We have carefully considered many of these cases. It will not be possible to comment at length upon the various decisions. To do so would unduly extend this opinion. To a

considerable extent the authorities are in direct conflict. We shall endeavor to express our own views as briefly as may be; and, recognizing the serious nature of the question before us, endeavor to rest the decision upon those basic principles of right and justice recognized and established by our free constitutional government.

The issue here has never been adjudicated in this State. It was discussed generally in *State ex rel. Rawlinson v. Ansel, Governor,* 76 S. C., 395, 57 S. E., 185, 190, 11 Ann. Cas., 613, where the Court said: "We have noticed at some length the question as to the right to issue mandamus against the Governor, not to take sides in that controversy, as this is not a case in mandamus, but to show the conflict on that vexed question and the difficulty in the way of asserting that in no case can a Governor be subjected to judicial process."

This case was later referred to in a brief *per curiam* order in *Brown v. Ansel, Governor,* 82 S. C., 141, 63 S. E., 449, where it was said: "Even if the Governor is subject to our writ of mandamus, a question noticed, but not decided, in *State v. Ansel,* 76 S. C. [395], 406, 57 S. E., 185, it appears from the petition that the act sought to be compelled is not a plain ministerial duty, but involves the exercise of discretion, and is therefore not·compellable by mandamus."

The holding in the latter case indicates the strong implication, however, that if the act sought to be compelled had been a plain ministerial duty, and had not involved the exercise of official discretion, the writ would have been issued. The decided leaning of the Court is apparent also in the language used and quoted from in *State ex rel. Rawlinson v. Ansel, Governor, supra.* We have no case, however, which may be said to be controlling on the question at issue.

The subject is exhaustively treated by Mr. Freeman in a monographic note attached to *Greenwood Cemetery Land Company v. Routt,* 17 Colo., 156, 28 P., 1125, 1126, 15 L. R. A., 369, 31 Am. St. Rep., 284.

Under the American system of government, each of the states is, by its Constitution, divided into three co-ordinate branches; namely, the executive, the legislative, and the judicial. Under well-recognized constitutional construction, each of these branches is, within the sphere of its constitutional and governmental powers, independent and free from the control of the others. Within these limits, the legislative branch cannot control the judicial; nor can the judicial control the legislative or the executive. The Governor is, by the Constitution, invested with certain important governmental or political powers and duties belonging to the executive branch of the State government, and the due performance of these duties is intrusted to his official honesty, judgment, and discretion. As to these purely executive or political functions devolving upon the chief executive officer of the State, and as to any other duties necessarily involving the exercise of official judgment and discretion, the doctrine is uncontroverted, and settled beyond the shadow of a doubt, that mandamus will not lie to control or compel his action. In other words, the action of the Governor, in the exercise of his political or governmental powers, whether the same are conferred by the Constitution or by statute, cannot be controlled by mandamus. *Hawkins v. Governor,* 1 Ark., 570, 33 Am. Dec., 346 (which in the latter volume is followed by a most thorough note on the subject by Mr. Freeman); *Tenn. & C. R. R. Co. v. Moore,* 36 Ala., 371; *People ex rel. Sutherland v. Governor,* 29 Mich., 320, 18 Am. Rep., 89; *Harpending v. Haight,* 39 Cal., 189, 2 Am. Rep., 432; *State ex rel. Whiteman v. Chase,* 5 Ohio St., 528; *State ex rel. Gruber v. Champlin,* 2 Bailey, 220.

But aside from the governmental, political, or discretionary powers and duties vested in the Governor by the Constitution or by statute, there is another class of powers and duties imposed upon him which do not necessarily belong to his office as part of the functions to be performed by him, which are created by express statute, and are merely minis-

terial in their nature. These duties in many, and in nearly all, instances might as well have been imposed upon any other of the State officers as upon the Governor. Such duties are positive, and partake almost entirely of a purely ministerial character. It is as to these that the conflict of authority exists.

As was said in the well-considered case of *State ex rel. Irvine v. Brooks, Governor,* 14 Wyo., 393, 84 P., 488, 490, 6 L. R. A. (N. S.), 750, 7 Ann. Cas., 1108, the character of the duty must be determined by the nature of the act to be performed, and not by the office of the performer. And the same principle was announced in the great case of *Marbury v. Madison,* 1 Cranch, 137, 170, 2 L. Ed., 60, 71, by Chief Justice Marshall. He said: "It is not by the office of the person to whom the writ is directed, *but the nature of the thing to be done* that the propriety or impropriety of issuing a mandamus, is to be determined."

The cases opposing the view that the Courts may issue a writ of mandamus against the Governor, either rest their decisions upon the ground that the duty enjoined upon the chief executive, the performance of which was sought to be enforced, was a political, and not a ministerial, duty; or else that all duties imposed upon the Governor, whether by the Constitution or by statute, are to be regarded as political or executive, and therefore involving discretion. See *People v. Morton,* 156 N. Y., 136, 50 N. E., 791, 41 L. R. A., 231, 66 Am. St. R., 547.

Various definitions have been given for ministerial duty: " 'The most important criterion, perhaps, is that the duty is one which has been positively imposed by law, and its performance required at a time and in a manner or upon conditions, which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.' Mechem on Public Officers, § 658. 'A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which

nothing is left to discretion. It is simply definite duty arising under conditions admitted or proved to exist, and imposed by law.' *Mississippi v. Johnson,* 4 Wall. (U. S.), 475, 498, 18 L. Ed., 437 [440]. 'A ministerial duty is one in respect to which nothing is left to discretion.' *Sullivan v. Shanklin,* 63 Cal., 247, 251. 'Where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the Act is ministerial.' *Commissioner of the General Land Office v. Smith,* 5 Tex., 471; *Rains v. Simpson,* 50 Tex., 495, 32 Am. Rep., 609." *State ex rel. Irvine v. Brooks, supra.*

A ministerial act in this connection has been well defined to be "one which a public officer or agent is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed." *Martin v. Ingham,* 38 Kan., 641, 651, 17 P., 162, 168.

No one can carefully read the Act creating and prescribing the method of appointment of tax collector of Cherokee County without reaching the conclusion that the duty therein placed upon the Governor to appoint is purely ministerial.

The statute provides that the appointment *shall be made by the Governor upon the recommendation of a majority of the members of the General Assembly from Cherokee County.* It is clear that the use of the word "discreet," as applied to the person to be recommended by a majority of the delegation, is only for their guidance, and affords no occasion for the exercise of any judgment or discretion on the part of the Governor. Nor can such appointment be legally made without such recommendation. *Elledge v. Wharton,* 89 S. C., 113, 71 S. E., 657.

The law imposes the positive duty upon the Governor to make the appointment at a time and in a manner or upon conditions which are specifically designated. It is a simple

definite duty arising under conditions admitted or proved to exist, and it leaves nothing to his discretion. It is ministerial.

Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. But when a positive duty is enjoined, and there is but one way in which it can be performed lawfully, then there is no discretion. *State ex rel. Irvine v. Brooks, supra.* In this case the majority of the legislative delegation from Cherokee County, in conformity with the Act, made and filed with the Governor an unqualified written recommendation requesting that the Governor forthwith appoint and commission the petitioner, J. C. Blalock, as tax collector of said county. This recommendation, which bears date October 17, 1935, recited that the proposed appointee was a discreet and capable person, and it was accompanied by testimonials to that effect. It thereupon became the duty of the Governor, if the petitioner also possessed the constitutional qualifications, to make the appointment. This recommendation was sufficient evidence under the law showing the right of the petitioner to the appointment. There was nothing left to the discretion of the Governor.

It should be observed that the allegation showing the fitness and discreetness of the petitioner for this office is nowhere attacked, denied, or disputed in the return of the respondent.

Perhaps the leading case on that side of the question, which holds that a writ of mandamus may issue against a Governor for the performance of a purely ministerial act, is that of *Greenwood, etc., Land Co. v. Routt, supra.* There the Court said:

"The authorities are uniform that the Courts cannot by mandamus control the action of the governor in the exercise of any of his political or governmental powers, whether the

same are conferred by the constitution or by legislative enactments. In the exercise of political and governmental powers the governor is independent, or, at most, is answerable only to the high Court of impeachment, or, as in the case of other elective officers, to the people. Mechem, Pub. Off., § 954 *et seq.*

"But may not the governor be invested with certain powers and duties in the exercise of which, under certain circumstances, he may have no discretion—powers and duties which are neither political nor governmental in their nature; powers and duties which might have been devolved upon some other officer or person; powers and duties pertaining to transactions of a purely business or financial character, and in which the specific rights of private persons, as well as the rights of the public, may be involved? Strange to say, in response to questions like the foregoing, some difference of judicial opinion has been expressed; but the greater number of opinions, and opinions which seem to us sustained by the better reason, concur in an affirmative answer.

"Without further comment at this juncture, let us proceed to further inquiries, bearing more directly upon the subject under investigation. If, in the exercise of some official power, neither political nor essentially governmental, the law specially enjoins upon the governor, as a duty, the performance of some particular act, under circumstances in which he has no discretion, and he refuses to perform the act, and by his refusal a private individual is deprived of his property or other legal right, is there no remedy? And, further, if there be no plain, speedy, and adequate remedy in the ordinary course of law, is the injured party to be denied redress by mandamus for the sole reason that the party committing the injury is the governor of the State?"

And after holding that the act required of the Governor in that case was purely ministerial, and involved no exercise of official judgment or discretion, the Court continued: "The argument which has been strongly urged in some

cases, though not in this, that the Court should not declare the law nor give judgment in a case of this kind against the governor, because the governor, as commander-in-chief of the military, might resist, is based upon a very improbable contingency. Such an argument is alike discreditable to the executive and to the judiciary of a free and enlightened state. The governor would have no more right, nor do we believe he would have any more inclination, in a case of this kind, to resist the mandate of the Court, than in a case in which he as a private citizen might be a party, or, for that matter, in a case in which he might not be personally connected with the litigation. In any event, the judiciary cannot properly shrink from its duty. Every person in the State, whatever his rank or station, is entitled to the equal protection of the laws; every person is also subject to governmental authority; and the Courts are charged with the responsibility of declaring the law applicable to any and all controversies properly presented, according to their best judgment, to the end that the rights of all persons may be protected, and their grievances redressed."

And further on, the Court continues: "These controversies are frequently due to an honest misapprehension as to the rights of the respective litigants. The majority of our people who may be engaged in litigating their honest differences will generally acquiesce in the decisions of the highest judicial tribunal of their country, without serious complaint, when substantial reasons for the decisions are fairly stated; but they will not be satisfied by an arbitrary rule which precludes them from having their differences heard and determined upon the merits, and especially will they not be satisfied when such arbitrary rule rests upon nothing more substantial or more acceptable to a free citizen than the official rank or dignity of the adverse party."

This reasoning is sound, and cannot be refuted.

Another strongly reasoned case, holding that a writ of mandamus may issue against the Governor to enforce a mere ministerial duty, is that of the *State ex rel. Whiteman*

*et al. v. Governor,* 5 Ohio St., 528. In that case the Court says: "Under our system of government, no officer is placed above the restraining authority of the law, which is truly said to be universal in its behests—'all paying it homage, the least as feeling its care, and the greatest as not exempt from its power.'"

Further on, the Court says: "The governor, in the exercise of the supreme executive power of the State, may, from the inherent nature of the authority in regard to many of his duties, have a discretion which places him beyond the control of the judicial power, yet in regard to a mere ministerial duty enjoined on him by statute, which might have been devolved on another officer of the State, and affecting any specific private right, he may be made amenable to the compulsory process of this Court by mandamus."

Lack of time and space forbids any further review of the numerous decisions reported in the books upon this very interesting question. Suffice it to say that we have examined and carefully considered the following cases and textbooks in the preparation of this opinion, in addition to those already cited: *People v. Morton, supra; Martin v. Ingham, supra;* Mechem on Public Officers, *supra; U. S. ex rel. Boynton v. Blaine,* 139 U. S., 306-319, 11 S. Ct., 607, 35 L. Ed., 183; *Hartranft's Appeal,* 85 Pa., 433, 27 Am. Rep., 667, 668; *Traynor v. Beckham,* 116 Ky., 13, 74 S. W., 1105, 76 S. W., 844, 3 Ann. Cas., 388; *Magruder v. Swann,* 25 Md., 173; *Cotten v. Ellis,* 52 N. C., 545; together with the splendid note treating the subject in 6 L. R. A. (N. S.), 751.

We hold that when, in the exercise of some official power neither political nor essentially governmental, the law specially enjoins upon the Governor of the State as a duty the performance of some particular act, under circumstances in which he has no discretion, and his refusal to perform the act deprives a party of his property or of some legal right, mandamus will lie against the Governor to compel the performance of such ministerial act, in

the absence of other plain, speedy, or adequate remedy at law.

The second ground of the demurrer is that the petition shows upon its face that the term of office to which the petitioner claims to have been recommended, expired on the 31st day of December, 1935, and that therefore the petition fails by reason of lapse of time, and that an appointment to the office now would be of no avail. We think there is merit in this contention.

The petition alleges that the term of office of the present tax collector expired December 31, 1934, and that on January 1, 1935, a new term of office began to run, the length of which was one year from the date of commencement. We think the contention is legally correct, that at no time during the year 1935 could the respondent as Governor have made an appointment extending beyond the limits of the then current term, which ended December 31, 1935.

The recommendation filed with the Governor must be taken to relate to that portion of the 1935 term intervening between October 17th and December 31st, and, that period of time having already expired, an appointment *nunc pro tunc* would be futile and ineffective.

Mandamus will not be granted when its issuance would prove nugatory or unavailing. *Ex parte Mackey,* 15 S. C., 322; *State ex rel. Shiver v. Comptroller General,* 4 S. C., 185.

While ordinarily the opinion might properly end here, we think it not inappropriate, in order that there may be an end of litigation, to consider a further question which is raised by the return of the respondent. It is there contended that the petitioner having no registration certificate issued to him in the County of Cherokee, he is therefore not eligible to hold the office of tax collector. There is merit in this position.

Article 17, § 1 of our Constitution, provides that: "No person shall be elected or *appointed* [italics ours], to any of-

fice in this State unless he possess the qualifications of an elector."

By Article 2, §§ 3, 4, registration is made one of the qualifications of an elector. These sections are fully construed and discussed in *Mew v. Charleston & Savannah Ry.,* 55 S. C., 90, 32 S. E., 828, 829, where it is held: "Qualifications of an elector, under the constitution, are citizenship, age, residence, and registration, subject to disqualification for certain crimes unpardoned, insanity, pauperism, and imprisonment, and subject to certain regulations in reference to the certificate of registration, and in reference to proof of payment of taxes when the elector offers to vote. If any distinction among qualifications is permissible, registration must have been deemed preeminent."

It is alleged in the return of the respondent, and not denied in the traverse by the petitioner, that J. C. Blalock, the petitioner, at the time of his recommendation for appointment as tax collector, had no registration certificate issued to him in the County of Cherokee.

It is contended by the petitioner that the only qualification required in the Act under discussion is that the person appointed shall be "discreet," and that the possession of a registration certificate is not necessary. We cannot agree with this argument. The constitutional provision quoted and construed in *Mew v. Railway Co., supra,* is definitely to the contrary. Therefore it follows that the respondent committed no breach of duty in failing and refusing to appoint the relator to the office of tax collector for Cherokee County.

The demurrer of the respondent to plaintiff's petition is therefore overruled as to the first ground of demurrer, and is sustained as to the second ground. Under the facts and circumstances appearing herein, and just referred to in our discussion of the second ground of demurrer, a peremptory writ of mandamus is denied. It is denied for the further reason that the relator does not possess the qualifications of an elector.

Mr. Chief Justice Stabler and Messrs. Justices Carter, Bonham and Baker concur.