[Civ. No. 16902. First Dist., Div. One. Mar. 28, 1958.]

PATRICK THOMAS HANCOCK et al., Appellants, v. HUGH M. BURNS, Individually and as Chairman of the Senate Fact Finding Committee on Un-American Activities et al., Respondents.

Albert M. Bendich, Lawrence Speiser, Rubin Tepper and Edward F. Newman for Appellants.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Raymond M. Momboisse, Deputy Attorney General, Ralph N. Kleps, Legislative Counsel, Charles W. Johnson, Chief Deputy, Melvin Faulkner and Sheehan & Wiseman for Respondents.

McMURRAY, J. pro tem.*—The four plaintiffs filed a complaint against the several named defendants in their indi-

*Assigned by Chairman of Judicial Council.

vidual capacities and as members of "The Senate Fact Finding Committee on Un-American Activities" (a California Legislative Committee) except in the case of Hugh M. Burns who was sued individually and as chairman of said committee and Richard E. Combs who was sued individually and as chief counsel for said committee.

Each plaintiff sued for the violation of rights common to all plaintiffs and alleged in the complaint that the same right to relief arose out of the same series of acts of the defendants therein named.

Each plaintiff alleged employment by the Pacific Gas and Electric Company in the following respective employments: meter reader, apprentice electrician, cable splicer and power lineman; and each alleged different damages for the injuries sought to be alleged in the complaint. Other than these differences, the causes of action sought to be alleged by plaintiffs were identical.

Each plaintiff alleged that the respective defendants were chairman, members, and chief counsel of the named committee at all times mentioned in the complaint; each plaintiff alleged his employment by the Pacific Gas and Electric Company in his particular capacity and alleged that he "always conducted himself in an efficient and punctual manner and was deservedly held in great esteem and credit by his employer and those with whom he worked. That by means of such employment, plaintiff daily acquired divers great gains, profits and emoluments to the support and maintenance of himself and his family and the great increase of his future."

Each plaintiff alleged that at a subcommittee meeting on August 10, 1953, after being subpoenaed, he was asked questions by defendants Burns, Thompson, Coombs, and Desmond as members and defendant Combs as chief counsel, of the said committee and that the said plaintiffs and each of them relying on their rights and privileges under the Constitutions of the United States and of the State of California, including the right not to be witnesses against themselves as provided in the Fifth Amendment of the United States Constitution, refused to answer questions concerning their political beliefs, associations and affiliations. Each plaintiff alleged that subsequent to said hearing the subcommittee and said defendant committee and the defendants individually and as chairman, members, and chief counsel for said committee "did wilfully, wrongfully and maliciously recommend that the said Pacific

Gas and Electric Company discharge the plaintiffs and each of them and did wilfully, wrongfully and maliciously induce the said Company to discharge plaintiffs for the plaintiffs' alleged refusals to cooperate with said Committee and on the grounds that the plaintiffs were poor security risks. That said defendant Committee and defendants Burns, Coombs, Desmond, McCarthy and Thompson, individually and as members of said Committee, and defendant Combs, individually and as chief counsel of said Committee, have no authority by reason of legislative action or authority, or by law or custom to make such recommendations nor to induce said Company to discharge the plaintiffs, and that such actions on the part of the defendants were not within the sphere of any legitimate legislative activity. That said recommendations and inducements were made for the sole purpose of injuring the plaintiffs in their employment and the divers great gains, profits the plaintiffs would accrue from their continued employment with said Company."

Each plaintiff alleged that the Pacific Gas and Electric Company on August 14, 1953, acting solely on the basis of the above stated recommendations and inducements, discharged the plaintiffs and each plaintiff further alleges that Pacific Gas and Electric Company thereafter notified the union to which plaintiffs belonged to the effect that said company was acting solely on the basis of the above stated recommendations and inducements in discharging said plaintiffs. A copy of the notification from the company to the union is incorporated by reference in each count of the complaint.

Each plaintiff alleged that he was ready, willing and able to resume his employment for the company. Each plaintiff alleged "[t]he plaintiffs are not potential saboteurs, security risks, nor are they unfit for continued employment by said Pacific Gas and Electric Company. The plaintiffs are loyal citizens of the United States of America and would not commit any action to hurt the security of said nation." Each plaintiff also alleged that the acts and things complained of were a violation of plaintiffs' rights under the Constitution and laws of the United States and the Constitution and laws of the State of California. A demurrer was interposed to the above complaint. Defendants annexed to their demurrer a copy of Senate Resolution Number 127, as amended, relative to creating the Senate Fact Finding Committee on Un-American Activities. The demurrer was sustained without leave to

amend and judgment was entered in favor of defendants. From this judgment the plaintiffs appeal.

Appellants here contend that their complaint sufficiently states a cause of action in tort for wrongful inducement of a breach of contract; that the complaint does not contain facts either on its face or from facts of which judicial notice must be taken which show that respondents' conduct was privileged; and that defendants were not protected by the doctrine of sovereign immunity, and ask that judgment of dismissal entered on the demurrer sustained without leave to amend be reversed.

Respondents contend that the demurrer was properly sustained without leave to amend because the lower court, having taken judicial notice of certain facts which, when read with the complaint, disclose the following defenses: absolute privilege for legislative acts within the sphere of legislative authority; qualified privilege for fair and true reports of the proceedings of a public meeting lawfully convened for a lawful purpose and open to the public; privilege to induce a breach of contract under section 767 of the Restatement of Torts (social interest to be protected; relationship of the parties); and privilege to induce another to stand upon his legal rights. They also urge that allowing a cause of action for wrongful inducement to breach a contract under the facts here presented would destroy the immunity given public officials when acting in their official capacity and mention that a judgment should not be reversed to permit recovery of nominal damages.

At the outset, it may be said that in this state a cause of action may lie for wrongfully inducing one to breach a contract of employment if such act is not protected by some privilege or immunity. (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33 [112 P.2d 631].) The principal question before this court, therefore, is whether or not, under the facts stated in the complaint, defendants may rely on a privilege for making a communication such as is here alleged or whether they may assert an immunity to suit for damages by reason of their status as legislators.

Although it is often stated that in considering a demurrer a court is bound to accept the truth of the allegations thereof, this statement may, in certain instances, be modified where, by the nature of the pleading, the court is apprised of the existence of a fact or facts of which it is bound to take judicial notice under the laws of this state. In 39 California

Jurisprudence 2d, section 22, under the title "Facts Judicially Noticed" it is said: ". . . In determining the sufficiency of a pleading, it may be read as though it included all such facts, though not pleaded, and even when the pleading contains an express allegation to the contrary. But the general rule of pleading that a demurrer admits the facts pleaded has no application to facts of which the court may take judicial notice. Allegations contrary to facts which the court may judicially notice are not admitted by demurrer, but must be disregarded and treated as a nullity." The complaint here containing, as it does, a reference to Senate Resolution Number 127 would appear well within this rule. The trial court was bound to consider the contents of this Senate resolution.

▮ Furthermore, it is well settled that a demurrer does not give statements of contentions and conclusions alleged in a complaint the status of admitted facts (*Howard* v. *City of Los Angeles,* 143 Cal.App.2d 195 [299 P.2d 294]), nor does it admit the deductions the pleader draws from the facts alleged, nor does it admit allegations of conclusions of law. The allegations contained in the complaint before us relative to the capacity in which defendants here acted is a conclusion of law. (See *Jackson & Perkins Co.* v. *Byron-Bethany Irr. Dist.,* 136 Cal.App. 375 [29 P.2d 217, 30 P.2d 516].) Neither does the use of the words "wilfully, wrongfully and maliciously" add to the pleadings except as they may convey a sense of outrage on the part of plaintiff.

The allegation that the defendants had no authority to make such recommendations is a conclusion as is the statement that defendants' acts were not within the sphere of any legitimate legislative activity. The allegation that an act was done maliciously has been held to be a conclusion (*Locke* v. *Mitchell,* 7 Cal.2d 599 [61 P.2d 922]).

▮ It is a familiar rule in this state that the right to amend a complaint after a demurrer is sustained should not be lightly denied (*Romano* v. *Wilbur Ellis & Co.,* 82 Cal.App. 2d 670 [186 P.2d 1012]). ▮ It is, however, proper to sustain a demurrer without leave to amend when the complaint cannot be amended to state a cause of action.

The appellants ably and forcefully contend that the mere fact that some of the complaint is based upon conclusions does not justify the ruling of the court below and state that the real question here presented is whether respondents may claim that they had a privileged relationship with Pacific Gas

and Electric Company to induce a breach of contract between that company and appellants.

The respondents urge that the complaint, when read in conjunction with the Senate resolution creating the committee, discloses that respondents were acting under color of their legislative authority and were immune from civil liability. The contents of Senate Resolution Number 127 are sufficient to constitute the committee as a committee of that body as expressly authorized by our state Constitution in article IV, section 37. The committee, by this resolution, is created and authorized and directed to investigate, ascertain, study and analyze all facts relating directly or indirectly to certain outlined un-American activities. The committee, by this resolution, is also empowered and directed in paragraph 5(d) thereof "[t]o report its findings and recommendations to the Legislature and to the people from time to time and at any time, not later than herein provided." The argument of appellants as to the possible immunity of defendants for the acts here complained of may be summarized as contending that the respondents may not avail themselves of any sovereign immunity since, by exceeding the sphere of proper legislative power, the defendants have lost the right to claim such immunity.

There is no question that article IV, section 11, of our state Constitution, providing for legislators' privilege from arrest does not here apply, nor is it here involved. Appellants further urge that by the demurrer here interposed the respondents waived any defense which they might have upon this ground as this demurrer was in fact a general appearance. This latter contention would seem to be more sophistic than real. The first ground of demurrer stated is that the court has no jurisdiction of the defendants or any of them or of the subject matter of the action. Appellants suggest that, even by reading the complaint in conjunction with Senate Resolution Number 127, it cannot be assumed that the defendants did not exceed the scope of legislative authority.

While Senate Resolution Number 127 does not, nor could it, authorize the commission of a tortious act, nevertheless, it does establish a committee of the state Senate authorized to act as an official adjunct of that body. Such committees are expressly authorized by our state Constitution in article IV, section 37. Therefore, by reading the Resolution in conjunction with the complaint, it becomes apparent that the

conjunctive pleading of respondents' status (as to respondents' having acted both as committee members and as individuals in doing the acts here complained of) must be grounded on reasoning that by going outside the legislative sphere the defendants were stripped of any legislative immunity and stand before the court as individuals.

This theory of the evaporative quality of legislative immunity, by its very statement, discloses its own vice. If government, operating through the individuals who form it, is afforded immunity from private suit only when its actions are beyond any question, and loses that immunity upon mere allegation of improper motives or unlawful acts in a complaint seeking damages, then those persons who form government are subject to the threat of personal liability in any matter in which their discretion is exercised.

. The fact that a legislative committee erroneously exercised powers, in a mistaken belief that it has such powers, would immediately subject its members to the harassment of litigation. What would a logical extension of this rule lead to so far as the judiciary is concerned? Would a judge who mistakenly assumed jurisdiction in a proceeding be liable to personal suit by an aggrieved party litigant who merely alleged wilfullness, wrongfulness and malice? Would not such a rule require the examination of the motives as well as the propriety of all governmental actions by our courts? We think so.

The basic principle of separation of powers which is one of the bases for our entire form of constitutional government would be diluted to a point where the judicial branch, because of artful allegations in a complaint, would be required to reexamine every act of the executive and legislative branches which had an adverse effect upon any individual.

Granting that the courts have the privilege and the duty of protecting the personal civil rights of the citizens of this country from abuse, nevertheless, when the enforcement of such personal civil rights results in an erosion of the government which alone can guarantee such rights, the obligation to society as a whole may dictate that the individual forego personal recovery for injury suffered so that government may continue.

It has often been said that when elected officials so conduct themselves as to indicate a lack of essential obligation to their responsibilities there are remedies available to the electorate which can correct these abuses; also the power of

impeachment still exists. "The Constitution has left the performance of many duties in our governmental scheme to depend on the fidelity of the executive and legislative action and, ultimately, on the vigilance of the people in exercising their political rights." (*Colegrove* v. *Green*, 328 U.S. 549, 556 [66 S.Ct. 1198, 90 L.Ed. 1432].)

It will no doubt be argued that, by holding the action here taken by the committee as within the protection afforded by legislative immunity, the members of such a committee could commit any tortious act by claiming it to be within the same rule. The argument would, however, fail. Were the committee or its members charged with the commission of some bodily injury inflicted on another in the course of conducting their hearings, such act could not reasonably be urged to come within the immunity here stated, as the mere recitation of the infliction of bodily harm is a statement of an act which by no reasonable means could be encompassed by the immunity.

The act here complained of is one which was committed by the use of the ordinary means adopted by such committees in reporting their findings and conclusions; namely, the preparation and forwarding of a written communication.

One of the basic foundations of our constitutional government is to be found in the separation of powers. This doctrine has been recognized as essential to a free form of government wherein public officers may perform their duties untrammelled by fear of sanction in the form of personal liability if it transpires that their acts were unwise or based upon a misinterpretation of the law. Much has been written, commencing with Montesquieu in the 18th century, and continuing up to date, regarding the necessity or advisability of continuing the doctrine of the separation of powers. It has been said, "The problems of government are complicated and difficult of solution. But must it not be apparent to everyone, as we gaze into the future, that we cannot hope to maintain the way of life which we call American without exercising every effort to preserve to each branch of government its proper sphere and to the states and the Union a due recognition of their proper functions." (*The Doctrine of the Separation of Powers and its Present Day Significance*, Arthur T. Vanderbilt, p. 142.)

The rights here sought to be enforced are assuredly rights to which a citizen of this country is entitled unless, in the

exercise of those rights, the person committing the act is protected by some privilege or immunity. This concept is recognized in section 767 of Restatement of Torts, where it is said, "In determining whether there is a privilege to act in the manner stated in § 766, the following are important factors:

"(a) the nature of the actor's conduct,

"(b) the nature of the expectancy with which his conduct interferes,

"(c) the relations between the parties,

"(d) the interest sought to be advanced by the actor and

"(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

It will be noted that under subdivision (e) the social interest of the persons involved must be considered by a court. When so considered, we feel that the continuance of the basic doctrine of the separation of powers has more social importance than is here presented by the individual defendants.

In view of our holding that the action of respondents here was protected by their legislative immunity from suit, it is not necessary to discuss the other points urged by appellants. The immunity appearing on the face of the complaint, it would be useless to allow amendment.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 25, 1958, and appellants' petition for a hearing by the Supreme Court was denied May 21, 1958. Carter, J., and Traynor, J., were of the opinion that the petition should be granted.