BROWN, J.
 

 This action was brought by plaintiff’s mother, Laura M. Elder, as guardian
 
 ad litem
 
 for her 17-year-old son, for claimed damages from an alleged libelous statement made by five defendants who were all of the duly elected trustees of the Caruthers Union High School District, and defendant Harry R. Anderson, who was the superintendent and an employee of said district.' Said defendants were not named in their official capacities. The alleged libel is part of an extensive special announcement mailed to many members of the general public within the boundaries of the school district. The portion of the announcement concerned and pleaded in the complaint is as follows:
 

 “At a special public meeting to [be] held Tuesday, November 24, 1959, in the Caruthers High School Gymnasium at 7:30 p. m. the Caruthers High School Board of Trustees, the administration, teachers and sponsors of the Los Angeles Band trip will bring the public in full focus on the serious violation of manners, morals and discipline that occurred in Los An
 
 *329
 
 geles as the direct result of interference by the Elder and Pries boys who are now suspended from school.”
 

 However, although not complained of, the announcement continued: ‘‘These boys were not members of the Band, but were in Los Angeles on their own. This is the issue that brought on this development; therefore, the full details will be open for all the public to hear and any other matter will be heard at this time, if desired.”
 

 The pretrial conference order stated that Harry Anderson was the superintendent and employee of the school district; that the other five defendants were the duly elected trustees of the school district; that the five trustees prepared the entire special announcement hereinabove referred to and mailed copies thereof to many members of the general public within the boundaries of the high school district; and that the said alleged libelous statement is contained in said special announcement.
 

 Subsequently, the defendants filed a motion to dismiss plaintiff’s complaint on the ground that said complaint was beyond the jurisdiction of the superior court, being barred by the doctrine of civil immunity.
 

 The court entered a judgment and order for dismissal on the ground that the action is beyond the jurisdiction of the superior court because the suit is against defendants who are public school officials and clothed with civil immunity for an alleged libel in the performance of their official duties.
 

 Plaintiff made a motion for a new trial which was denied, and it is from the judgment that plaintiff now appeals.
 

 On an appeal from a judgment of dismissal entered on the pleadings, the facts alleged in the complaint must be taken to be true
 
 (Saroyan
 
 v.
 
 Burkett,
 
 57 Cal.2d 706, 708 [21 Cal.Rptr. 557, 371 P.2d 293], and we must assume that the plaintiff can prove all facts as alleged. However, the appellate function does not include fact finding. Accordingly, questions as to whether the material complained of is in fact defamatory and questions relating to defenses, if any, will not be here considered or determined. The task of this court is to determine whether the trial court erred in finding this,to be a proper ease for application of the doctrine of civil immunity.
 

 Plaintiff claims that the doctrine of civil immunity does not apply to public officials if they are performing ministerial acts as opposed to discretionary acts, or if their acts are not within the course and scope of their authority.
 

 
 *330
 
 Education Code, section 10751, specifically provides: “No teacher, principal, employee, or governing board member of any public, private, or parochial school
 
 shall give out any personal information concerning any particular minor pupil
 
 enrolled in the school in any class of the twelfth grade or below or in the thirteenth or fourteenth grades of a public junior college to any person except under judicial process unless the person is one of the following:
 

 “(a) A parent or guardian of such pupil.
 

 “ (b.) A person designated by such parent or guardian in writing.
 

 “(c) An officer or employee of a public, private, or parochial school where the pupil attends, has attended, or intends to enroll.
 

 “(d) An officer or employee of the United States, the State of California, or a city, city and county, or county seeking information in the course of his duties.
 

 “(e) An officer or employee of a public or private guidance or welfare agency of which the pupil is a client.
 

 " Restrictions imposed by this act are not intended to interfere with the giving of information by. school personnel concerning participation in athletics and other school activities, the winning of scholastic or other honors and awards, and other like information. Notwithstanding the restrictions imposed by this section, an employer or potential employer of the pupil may be furnished the age and scholastic record of the pupil and employment recommendations prepared by members of the school staff, and rosters or. lists containing the names and addresses of seniors in public, private, or parochial high schools or junior colleges may be furnished to private 'business or professional schools and colleges.” (Italics added.)
 

 ' This section requires strict interpretation. It indicates by the exceptions that the legislative intent was to permit only the giving of personal information concerning the pupils involved in the participation of athletics and school activities, the winning of honors and awards and other similar information. It also permits the giving of personal information concerning the age and scholastic records of a pupil and lists of names and addresses of seniors in high schools to private business or professional schools and colleges. Thus, under no circumstances is any information to be given out by the school or its officials for any other purposes, whether beneficial or detrimental, except when waived in a public hearing under section 986 of the Education Code.
 

 
 *331
 
 Plaintiff admits that the school board has the right and the discretion to determine whether or not to send out notices calling public meetings and also to send out announcements concerning activities of the school board, but that to insert such personal information in the announcements is an express violation of section 10751 of the Education Code.
 

 Discretionary acts are those wherein there is no hard and fast rule as to the course of conduct that one must or must not take and, if there is a clearly defined rule, such would eliminate discretion.
 
 (Goodman
 
 v.
 
 Goodman,
 
 68 Nev. 484 [236 P.2d 305].)
 

 In the case of
 
 Blalock
 
 v.
 
 Johnston,
 
 180 S.C. 40 [185 S.E. 51, 54, 105 A.L.R. 1115], “discretion” is defined as follows: “Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. But when a positive duty is enjoined, and there is but one way in which it can be performed lawfully, then there is no discretion.”
 

 In
 
 State
 
 ex rel.
 
 Hammond
 
 v.
 
 Wimberly,
 
 184 Tenn. 132 [196 S.W.2d 561, 563], the court stated: “. . . where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial, but where the act to be done involves the exercise of discretion and judgment it is not to be deemed merely ministerial.”
 

 Therefore, it is the plaintiff’s contention that all matters in which discretion is not allowed are ministerial acts; that the prohibition expressed in section 10751 of the Education Code constitutes a mandatory, hard and fast rule; and that violation of that section eliminates the doctrine of sovereign immunity as far as the defendant trustees are concerned. With this we agree.
 

 “Government officials are liable for the negligent performance of their ministerial duties [citations] but are not liable for their discretionary acts within the scope of their authority [citations] . . . .”
 
 (Muskopf
 
 v.
 
 Corning Hospital Dist.,
 
 55 Cal.2d 211, 220 [11 Cal.Rptr. 89, 359 P.2d 457].)
 

 In
 
 Lipman
 
 v.
 
 Brisbane Elementary School Dist.,
 
 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465], the school trustees, outside of a meeting, made certain disparaging remarks concerning the superintendent of schools to members of the public. Such remarks were that the superintendent was dictatorial,
 
 *332
 
 operated a rubber-stamp board, was overpaid, suppressed facts from the board, tampered with minutes of the meetings, received kickbacks from district employees, engaged in shady dealings and cleaned up on business transactions. The court said, at pages 234, 235:
 

 1 ‘‘ The statements allegedly made to the press and to members of the public were not confined to reports of charges that were being
 
 made;
 
 they purported to be statements of fact and were beyond the scope of the trustees’ powers. In making these statements the three trustees were not within the immunity rule, and a cause of action is stated against them. The case of
 
 Hardy
 
 v.
 
 Vial,
 
 48 Cal.2d 577 [311 P.2d 494], relied upon by defendants, is distinguishable because the school defendants involved there did not make statements to the public but only to three nonschool persons who filed false charges against the plaintiff with an appropriate administrative body in carrying out an alleged conspiracy with the officials. . . . They cannot claim immunity insofar as they made or caused to be made defamatory statements concerning plaintiff to members of the public which were not merely reports of official action but instead purported to be statements of fact within their personal knowledge.”
 

 The
 
 Lipman
 
 ease, at page 230, states that the school district, itself, is immune from “tort liability for the alleged acts of the’ trustees within the scope of their authority, and familiar principles of agency preclude its liability for acts outside the scope of their authority.” It further held, at page 233, that:
 

 “The rule is settled, as pointed out above, that governmental officials are not personally liable for discretionary acts within the scope of their authority, and this rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which, although only incidental and collateral, serve to promote those purposes.
 
 (White
 
 v.
 
 Towers,
 
 37 Cal.2d 727, 733 [235 P.2d 209, 28 A.L.R.2d 636].)”
 

 In the present ease, the school trustees have stated that the complaint alleges an intentional and. malicious tort, as compared with a negligent act, and that under no circumstances is the state liable for intentional and malicious acts of its public officials or its employees.
 

 Defendants cite Civil Code section 22.3, passed by the 1961 session of the Legislature, which reenacts the rule of sovereign immunity and which legislative action was held constitutional by our Supreme Court in
 
 Corning Hospital
 
 
 *333
 

 Dist.
 
 v.
 
 Superior Court
 
 (the
 
 Muskopf
 
 case,
 
 supra),
 
 57 Cal.2d 488 [20 Cal.Rptr. 621, 370 P.2d 325]. Section 22.3 was designed to temporarily nullify the effect of the first
 
 Muskopf
 
 case,
 
 supra,
 
 55 Cal.2d 211, insofar as it affected the governmental agency itself—not its agents and employees.
 

 Was the Conduct of the Defendants Beyond the Course and Scope of Their Authority?
 

 School boards have only such authority as is specifically granted by the Legislature, to be exercised in the mode and within the limits permitted by the statute.
 
 (Hughes
 
 v.
 
 Ewing,
 
 93 Cal. 414, 417 [28 P. 1067].)
 

 We think it is clear that no immunity exists for discretionary acts if the acts complained of are beyond the course and scope of the duties of the school trustees. (See
 
 Lipman
 
 v.
 
 Brisbane Elementary School Dist., supra,
 
 55 Cal.2d 224.)
 

 The special announcement does not imply that the plaintiff was being charged with certain indiscretions, but states as a pure matter of fact that the plaintiff minor was involved in “serious violations of manners, morals and discipline that occurred in Los Angeles as the direct result of interference by the Elder [plaintiff] and Fries boys who are now suspended from school.”
 

 It is certainly true that governmental officials are not personally liable for discretionary acts within the course and scope of their authority, but, as the
 
 Lipman
 
 case provides (p. 233), “. . . this rule applies not only to acts essential to the accomplishment of the main purposes for which the office was created but also to acts which, although only incidental and collateral, serve to promote these purposes.” We admit that the case before us may be an important one to all public officials. It is true that official bodies should obtain and retain outstanding citizens to hold public office, even though the positions may not have a great deal of monetary compensation but only the reward of public service. We borrow some of the language of Judge Learned Hand, stated in
 
 Gregoire
 
 v.
 
 Biddle,
 
 177 F.2d 579, 581: To subject citizens serving as public officers to suit and trial in every instance in which their good faith but mistaken actions caused injury to another “would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.” But here we find more than a good faith mistaken action. In this ease defendants’ trustees violated a code
 
 *334
 
 section prohibiting dissemination of personal information concerning pupils, and thus stepped outside the protection of their office.
 

 In the case of
 
 Hancock
 
 v.
 
 Burns,
 
 158 Cal.App.2d 785 [323 P.2d 456], the Senate Pact Finding Committee on Un-American Activities made certain statements regarding the plaintiffs to their employer, causing them to lose their positions. It was held that the action of defendants was protected by their legislative immunity from suit. This is far different from the case before us in which the alleged defamatory statements were made in the general circulation of a special announcement to many members' of the general public in the school district. In
 
 Hancock,
 
 the court said at page 792:
 

 “If government, operating through the individuals who form it, is afforded immunity from private suit only when its actions are beyond any question, and loses that immunity upon mere allegation of improper motives or unlawful acts in a complaint seeking damages, then those persons who form government are subject to the threat of personal liability in any matter in which their discretion is exercised.”
 

 Hancock
 
 states further at page 792, “. . . that when elected officials so conduct themselves as to indicate a lack of essential obligation to their responsibilities there are remedies available to the electorate. ...”
 

 Defendants complain that this quotation from the special announcement is taken out of context. Matters to be discussed at the meeting which were mentioned in the special announcement were: That a group of people had held a meeting to which the trustees, teachers or public were not invited on how to improve the school district; that at this meeting the true purpose was to discuss and circulate a petition relative to dividing the school district and eliminating the administrators; that one of the persons at the meeting, Mr. Fries, was dissatisfied because his son had been suspended from school and that he wanted a special set of rules to apply to his son ; and that the school trustees had been complimented on their efforts in seeing that the school was operated in an efficient and orderly manner. The portion complained about in this action next appeared; and, lastly, there were statements that the trustees, administrators and teachers felt that any issue should be brought before the Board of Education at the proper time, with both the public and officials attending; that the board does not believe in secret meetings; that the greatest help to the school district would be the' elimination of those
 
 *335
 
 few students who refuse to study and obey the rules and cause a constant turmoil; and that the proposed special meeting was for the general adult public in the school district and students would not be permitted.
 

 We do not think it makes any difference if there are many acts involved, as in the
 
 Lipman
 
 case,
 
 supra,
 
 55 Cal.2d 224, as compared to the present case where there is only one special announcement which was sent to many members of the general public in the district.
 

 In
 
 Cross
 
 v.
 
 Tustin,
 
 165 Cal.App.2d 146, 149-150 [331 P.2d 785], the court said: “It is settled law that the defense of sovereign immunity from suit presents a jurisdictional question; that the state may not be sued without its consent.
 
 (People
 
 v.
 
 Superior Court,
 
 29 Cal.2d 754, 756-757 [178 P.2d 1, 40 A.L.R.2d 919];
 
 McPheeters
 
 v.
 
 Board of Medical Examiners,
 
 74 Cal.App.2d 46, 49 [168 P.2d 65].) This immunity protects public officers and employees acting within the scope of their duties, even against charges of malicious personal torts, such as libel, slander, and false prosecution.
 
 (Rauschan
 
 v.
 
 State Compensation Ins. Fund,
 
 80 Cal.App. 754 [253 P. 173];
 
 Gould
 
 v.
 
 Executive Power of the State,
 
 112 Cal.App.2d 890 [247 P.2d 424];
 
 White
 
 v.
 
 Towers,
 
 37 Cal.2d 727 [235 P.2d 209, 28 A.L.R.2d 636];
 
 Hardy
 
 v.
 
 Vial,
 
 48 Cal.2d 577 [311 P.2d 494];
 
 Gregoire
 
 v.
 
 Biddle,
 
 177 F.2d 579.) ”
 

 In the
 
 Cross
 
 case,
 
 supra,
 
 the plaintiff alleged that the defendants were acting within the course and scope of their authority. Therefore, it was held that the defendants were immune from civil prosecution. In the present ease, however, the defendants were not acting within the course and scope of their authority. The alleged libelous statements contained in the special announcement do not specify that final action by the school board as to disciplinary matters will be taken at the proposed meeting (Ed. Code, § 986).
 

 While subsections (c) and (d) of section 984 of the Education Code provide for regular and special meetings and notices of such meetings of the school trustees, there is no express authorization given to the board to set forth matters in such advance notices which are prohibited by section 10751 of the Education Code. It is provided by section 985 of the Education Code that, “No action authorized or required by law shall be taken by the governing board of a school district except in a meeting open to the public. ’ ’ An exception thereto is made by section 986 of the Education Code which states, in pertinent part:
 

 
 *336
 
 “ Notwithstanding the provisions of Section 985 of this code . . the governing body of a school district may hold executive sessions to consider the expulsion, suspension, or disciplinary action in connection with any pupil of the school district, if a public hearing upon such question would lead to the giving out of information concerning school pupils which would be in violation of Section 10751 of the Education Code.”
 

 Thus, in effect, the school district is permitted by the Open Meetings Law (§ 985) to hold an executive session to consider disciplinary problems, but only when it would not violate section 10751, which prohibits the school trustees from giving out personal information concerning a pupil. In other words, the school district is prohibited from holding open meetings on such subjects, unless a public meeting is requested by the pupil concerned, or by his parent or guardian. If no such request is made, the school district’s governing board may hold a closed door, executive session where the subject matter of the inquiry involves the disclosure of personal information.
 

 However, the last sentence of section 986 provides that after the matter has been considered, either in executive session or public meeting, the final action of the board shall be taken at a public meeting and the result of such action' shall be a public record of the school district. This allows the result of such action to be a public record without the details as to the cause or reason for the result, and would allow the board to put out for the first time the information that a student had been suspended or expelled, but without explaining the details. We do not know from the record that such a meeting had been held, or that the minor plaintiff had been suspended. The violation of section 10751 has no direct penalty even when truthful information is given, but if such information is false and defamatory, then the trustees, individually, are responsible as to libel and slander, as would be other citizens.
 

 We cannot tell from the general allegations in the complaint just exactly what Harry E. Anderson, as the superintendent of the school district, is alleged to have done, other than that generally alleged against all the other defendants. According to the
 
 Lipman
 
 case,
 
 supra,
 
 55 Cal.2d 224, Anderson cannot claim immunity insofar as he may have made or caused to be made defamatory statements concerning the plaintiff to members of the general public which were not merely reports
 
 *337
 
 of official action but instead, purported to be statements of fact within his personal knowledge.
 

 The judgment is reversed.
 

 Stone, Acting P. J., concurred.
 

 Conley, P. J., deeming himself disqualified, did not participate.
 

 A petition for a rehearing was denied July 25, 1962. Conley, J., did not participate therein. Respondents’ petition for a hearing by the Supreme Court was denied August 22, 1962.